CHAS. N. CARPENTER, Appellee, v. SECURITY FIRE INSURANCE COMPANY, Appellant.

TRIAL:   Hostile Theories—Proximate Cause.   A jury question is necessarily presented on the issue of the proximate cause of an injury whenever the record reveals, to a reasonable certainty,

that such injury resulted from *one* or the *other* of two hostile causes,—i. e., one which permits recovery and one which denies recovery,—and the record is such that the jury may fairly find therefrom that one cause is more *probable* than the other.

PRINCIPLE APPLIED: Plaintiff sought to recover the value of a mare which was insured against death by lightning. The mare was 14 years of age, weighed 1,400 pounds, and had never been sick. She, with other animals, had been placed in a 28-acre pasture, on May 16th. Up to July 16th following, when she was last seen alive, she appeared at all times to be in perfect health and condition. In the afternoon of the next day, two storms, with little rain, but accompanied by severe thunder and lightning, occurred in the apparent vicinity of this pasture. On Wednesday morning following, the mare, much bloated, and with her legs sticking straight out from the body, was found dead in the pasture, and about 4 rods or less from a wire fence. Eggs, but no maggots, were noticed in her mouth. This, ordinarily, would be the condition of a horse that had been dead from 24 to 36 hours. The jury could have found that, when she was found, she had been dead about that length of time. Absolutely no indication of lightning was found on or about the mare, the fence, the trees, or the ground. Indication of a struggle on the part of the mare was wholly absent. It was shown that a horse seldom, if ever, dies from disease without violent struggle. No wound appeared on the body. It was shown that animals are ofttimes killed by lightning without showing any indications of the lightning or of a struggle after the stroke. *Held*, a jury question was presented on the issue whether the mare was killed by lightning.

*Appeal from Greene District Court.*—E. G. ALBERT, Judge.

JUNE 27, 1918.

ACTION on a policy of insurance against death by lightning, to recover for the death of a horse alleged to have been killed by lightning. Cause tried to a jury. Verdict for the plaintiff. Judgment on the verdict. Defendant appeals.— *Affirmed.*

*Church & McCully,* for appellant.

*E. B. Wilson* and *Howard & Sayers,* for appellee.

GAYNOR, J.—This is an action to recover the value of a mare, alleged to have been killed by lightning. The action is based on an insurance policy indemnifying plaintiff against loss or damage by lightning on certain personal property. The mare in question was covered by the policy. The cause was tried to a jury. At the conclusion of all the evidence, the defendant, by proper motion, requested the court to instruct the jury to return a verdict for the defendant, on the sole ground that the evidence was wholly insufficient to sustain a verdict for the plaintiff. This motion was overruled, the cause submitted to the jury, and a verdict returned for the plaintiff. From this, defendant appeals, and on this appeal, alleges that the verdict is without support in the evidence.

This mare, with other animals, was placed and kept in a pasture containing about 28 acres, and was found dead in the pasture on the afternoon of July 19, 1916, about 1 P. M. She was about 14 years of age, and was owned and raised by the plaintiff. She weighed, at the time, about 1,400 pounds, and had never been sick. She was placed in the pasture on the 16th day of May preceding, and, during all the time, and up to July 16th, appeared to be perfectly sound, and showed no signs of disorder or anything that indicated that she was not in perfect health. She was last seen alive on Sunday, the 16th of July, and was then apparently well. On Wednesday morning, the 19th, she was found dead in the pasture. On Monday afternoon, July 17th, there was an electric storm, with very little rain, and some severe lightning, with thunder. It was in the neighborhood of this pasture. The lightning appeared to be in the vicinity of the pasture. When the mare was found, she was lying dead, about four rods from a barbed wire fence, and looked as though she had been dead for several hours,— the witnesses say, from 24 to 36 hours. There were several witnesses called who visited the mare on the afternoon of the

19th, and their testimony shows substantially the following facts:

W. E. Piatt testified that the mare was placed in his pasture on the 16th day of May, 1916; that he visited the pasture frequently, every two or three days. He testified:

"She weighed about 1,400 pounds,—a good work mare. She appeared to be sound. Had some of my own horses there. This mare never showed any signs of disorder, or anything that indicated that she was not in perfect health, from the 15th of May down to and including the 16th day of July, the last day I saw her. I saw her alive on the 16th of July. That was on Sunday. I next discovered her in the pasture, dead. This was on Wednesday morning, the 19th of July. On the afternoon of Monday, July 17th, there were two storms, with severe lightning and thunder. It was lightning high up, and thundering. It seemed to be in the vicinity of this pasture where the mare was found. When I found the mare, she was lying about a rod from the fence. It was a four-barb-wire fence. When I found her, she was swelled, and looked as though she had been dead 24 hours or more, and there were eggs about her mouth. There were no maggots. Having observed animals prior to that time that laid about 24 hours, the eggs, as compared, were about the same as found on this mare. I observed the ground, the surface of the ground around where the mare was lying, and at the point where she was lying. There was no evidence of any struggle. There was no tearing up of the grass at the place where she was lying. I have handled horses ever since I was old enough. When suffering from a disease, they always struggle a great deal, and make a lot of marks. There was nothing to indicate a struggle there. I went with the appraisers to look the mare over, about 1 P. M. on Wednesday, the 19th. The electrical storm on the 17th occurred about 3 o'clock in the afternoon. I was about three quarters of a

mile from this field. I had horses in the same pasture. I didn't think it severe enough to see if any of my horses had been struck. When I was examining this mare, I didn't see any evidence of lightning on the fence; didn't see any evidence of lightning on the posts. I didn't see any evidence of lightning having struck the ground. I didn't see any evidence of lightning on the horse. We looked to see if there were any marks of lightning. We were close enough to the ground to see, and we couldn't see any marks on the mare. I was then in company with the appraisers. This electrical storm I am speaking of was simply a cloud or two that passed over the sky at that time. There was just a little sprinkle of rain. There was not more than enough to lay the dust. I don't know whether you could have told, 30 minutes afterwards, whether there had been any rain or not. The sun shone part of the time. There were 26 head of horses in the field. The grass was eaten down pretty reasonably close. The weather about this time was pretty hot. That month was very warm. The horse was lying there on its side, and bloated, with its feet sticking straight out. Its feet were not turned up to its body or huddled up in any way. I decided, after looking the horse over, that it had been dead about 24 hours. I talked the matter over with the appraisers. We agreed that, in our judgment, the horse had been dead about 24 hours. I have seen animals die from lock bowels and colic. I have never seen them die of anything without a struggle. Mr. Harry Munch's horse got sick in that pasture; was troubled with lock bowels; lived about three days."

Another witness, who acted as one of the appraisers, testified:

"I saw the mare on Wednesday, July 19th, about 1 o'clock. The pasture was dry. We walked up and looked at the mare; looked her over. We were near enough to see the fence. I did not see any indication of the horse having been

struck by lightning. I did not see any signs of lightning around the ground about the horse. I did not see any marks of lightning on the trees close. I did not see any lightning, visible effects of lightning, on the horse itself. The weather was pretty hot. I did not notice the hair slipping any. We were there about half an hour. We agreed that the horse' had been dead about 24 hours. That is my best judgment. It may have been 36 hours."

Frank Tiffany, another of the appraisers, testified substantially the same.

Dr. Smith, who qualified as a veterinary, testified:

."I have had experience in the examination of animals after they have been found dead from different causes. I have treated them when sick. There is usually signs of struggle in all diseases. There might be the possibility of an animal dying without struggling. Animals usually struggle when they die. There is very seldom external physical signs when an animal is struck by lightning. It is an impossibility to be definite as to the cause of the death. We have certain lesions which we look for in lightning strokes, and often animals are killed by lightning which show no indications."

He was then asked this question:

"Assuming the mare in controversy was 14 years of age; that she had always been healthy; that she had worked in the field during the spring work, and was then placed in the pasture about the 15th day of May; that she continued in said pasture until the 16th day of July, the weather being warm, and the mare at all times appearing to be in perfect condition, the mare never, at any time, having shown, from the time she was a colt, any evidence of any illness or sickness of any kind; and assuming further, Doctor, that the mare was in a healthy condition on Sunday night; that she had been accustomed to running in an open pasture from the 15th of May to the 16th of July, that being Sunday evening;

and assuming further that an electrical storm had occurred in that vicinity on the afternoon of the day following, which would be Monday, and assuming further that, on Wednesday morning of the same week, the mare was found dead in the pasture, without any evidence whatever of any struggle, and without the grass or the ground showing that it had been disturbed, on account of any struggle at the point where she was lying,—what would you say, Doctor, from your experience as veterinarian, was the probable cause of the death of the animal under such circumstances? A. I cannot answer."

Another witness testified that, on the 19th, he examined the horse and the ground around and beneath the point where the horse was lying, and saw no signs of pawing or struggling, and saw no indication that the grass had been crushed or torn; that there was nothing to indicate that the horse had been struck by lightning; that he saw no signs of lightning on the ground around the horse; saw no marks of lightning on the trees; did not see any physical effect of lightning on the horse itself; that his thought was that the horse had been dead 24 hours or more,—maybe 36 hours. All the other witnesses testified substantially the same. This is all the evidence upon which plaintiff predicates his claim that this horse was killed by lightning.

It is conceded that, unless the horse was struck by lightning, plaintiff has no cause of action against the defendant. It is not for us to determine from this record, as an original question, whether this horse was killed by lightning or not. It is sufficient if we are able to say from this record that the evidence fairly presents a question for the jury as to whether it was killed by lightning. When questions about which there is controversy come before the court for determination, with a jury sitting as triers of the fact, it is the business of the court to take the judgment of the jury upon the facts, if, peradventure, the record is such that reasonable

minds, searching for an answer, might reasonably differ as to what the answer should be. This may be established as well, and sometimes better, by circumstantial evidence than by the direct testimony of witnesses. The ultimate question is this: Has the plaintiff sustained his contention by suf- ficient evidence that reasonable minds, searching for the truth in the record, are able to say from the record, with reasonable certainty, that the fact asserted is as contended? That the plaintiff is not able to make his case beyond a rea- sonable doubt, is not ground for denying him the right claimed. If an intelligent mind, looking over the field made by the record, is able to find a reasonable and substantial basis, in the facts proven, on which the truth of the conten- tion made may be sustained, the matter goes to a jury. It is presumed to be an intelligent and honest searcher after the truth. When it then says that the ultimate fact is proven, this court does not interfere. Of course, plaintiff cannot re- cover upon a showing which does no more than disclose a possibility that his contention is true. He is bound to show that it is true, or he must fail; but he is not bound to ex- clude all reasonable doubt. Whenever the evidence pre- sented in support of any contention is such that it may, when fairly and honestly weighed and considered, produce a conviction in the mind that the fact exists as contended for, it becomes a question for the determination of the legal triers of fact. Proximate cause, under all ordinary circum- stances, is a question of fact; and where it depends upon circumstances from which different minds might reasonably draw different conclusions, or where all the known facts point to the claimed negligence as the cause, the submis- sion of the question to the jury is no ground for reversal.

In *Lunde v. Cudahy Packing Co.*, 139 Iowa 688, 701, this court said:

"If there be shown any facts bearing upon the question, and they afford room for fair-minded men to conclude there-

from that one theory of the case is better supported than the other, the question cannot be properly withdrawn from the jury [citing authority]."

It often happens, in the trial of cases, that the record presents two theories, as to the cause of the injury, either one of which might have been correct. One theory precludes and the other includes liability. The jury is bound to gather the truth from the evidence. If the theory which includes liability finds support—rational and reasonable support—in the evidence, the fact that reasonable minds might differ as to which of the two theories is better supported by the evidence, does not justify the court in taking the case from the jury. The question for the court is not whether reasonable minds might differ as to which theory was better supported by the evidence, but whether the theory adopted, upon which liability is predicated, is so sustained by the record that a fair controversy exists as to whether or not it is, in fact, the true theory. When that condition arises in the record, the jury alone has the right to determine, and their judgment, having support in the evidence, is conclusive upon the parties and the court.

That the horse in question died some time between the 16th and the 19th of July, is not disputed. The cause of its death is a matter of controversy. The plaintiff claims that it was killed by a stroke of lightning. The defendant simply says, "Prove it. Prove your claim." This is what the plaintiff undertook to do. The record develops two theories, either one of which may account for the death of the horse. First, it may have been struck by lightning, and so killed. Second, it may have died from natural causes. One theory sustains plaintiff's claim. The other is against plaintiff's claim. The burden is upon the plaintiff to show that it was killed by lightning. No burden is upon the defendant to show that it did die a natural death. In establishing the charge that it was killed by lightning, the plaintiff is met ·

by the suggestion that the record makes it no clearer that
it was killed by a stroke of lightning than that it died from
natural causes. This was the shadow cast between the plain-
tiff and the jury, at the time the motion for a directed ver-
dict was filed. To clear this shadow, the court turned to the
record. The facts were all disclosed, surrounding the death
of this horse, so far as known. The determination of the
question involves a balancing of the probabilities, and the
question arose: Could the jury, from the record, say that
the mare died from lightning, rather than from natural
causes? The policy insured the plaintiff against death from
lightning. Therefore, the record must present a state of
facts from which the jury could honestly say that it affirma-
tively appeared in the record that the horse was killed by
lightning. The record here shows that the mare in question
was 14 years of age; that she had never been sick; that she
appeared to be in perfect health from the 16th day of May
to the 16th day of July; that she had been in this open
pasture, exposed to the elements, during all that time; that,
when last seen, on the 16th day of July, she was apparently
well; that, on the 17th day of July, an electrical storm
passed over the pasture in which she was confined; that, on
Wednesday, she was found dead in the pasture. The jury
might well find that she died 36 hours before she was found.
This would establish her death as occurring at the very time
that this storm passed over the pasture. There was no evi-
dence of any struggle, no marks upon the ground beneath
her body, or around the place where she was lying, indicat-
ing a struggle. There is evidence that horses rarely die from
natural causes without giving evidence of some struggle.
The jury might well find that lightning does not always
leave its mark; that death from lightning is instantaneous,
or usually so; that no struggle would follow a death from a
stroke of lightning. The jury might well say that, had the
death been from natural causes, there would be evidences up-

on the ground of death struggle at the place where she was
found, and that the absence of this precluded the thought of
death from natural causes.   The action of the elements is
a matter of common observation.   The record shows that, in
striking animals, lightning often leaves no mark upon the
body.   The jury were entitled to bring to their aid, in the
solution of this question, a consideration of facts which are
commonly known to men—the fact that the action of light-
ning is dependent largely upon atmospheric conditions.   It
had direct evidence of facts which negatived conclusions
that might be drawn, prejudicial to plaintiff's contention.
We think there was a fair fact controversy in this case, and
that it was properly left to the jury, and that their verdict
is binding upon us, and that the court was right in sub·
mitting the case to the jury upon the record made.   There
being no reversible error, the cause is—*Affirmed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.