# CHARLESTON.

## L. W. MYERS v. JOHN SUMMERVILLE et al.

Submitted March 7, 1922. Decided March 14, 1922.

1. PRINCIPAL AND AGENT—*Agent's Act Within Apparent Scope of Authority Binds Principal.*

   The act of an agent within the apparent scope of his authority binds his principal. (p. 490).

2. MINES AND MINERALS—*Mining Company's Paymaster's Placing of Bonds of Employee in Company's Safe Held to Bind Company.*

   Where a superintendent of a coal mine, in order to retain the services of an employee necessary to the mining operations, goes on a peace bond for him, and as security, therefor receives from him as a pledge certain United States Government Bonds, which he delivers to the company's paymaster and mine office clerk, who places them for safe keeping in the company's safe, of which he has charge, and it appears that the company's principal office is in a distant state, such act of the paymaster under the circumstances shown in the opinion in this case is within the apparent scope of his authority and binds the principal. (p. 490).

3. PLEDGES—*Pledgee is Bound to Return Government Bonds Given to Secure Him on Peace Bond Upon Discharge of Latter Bond.*

   If the bonds so deposited be regarded as a pledge, then upon the discharge of the peace bond, the pledgee is bound to return the bonds, and in case of his failure so to do, to respond in damages for their value. (p. 490).

4. BAILMENT—*Bailee of Gratuitous Bailment is Bound to Excuse Loss Where Failure to Deliver on Demand Before Suit.*

   If they be regarded as a gratuitous bailment, then the bailee, in case demand therefor is made before suit, is bound to show some excuse for their loss. (p. 490).

Error to Circuit Court, Mineral County.

Action by L. W. Myers against John Summerville and others. Action dismissed as to Summerville, and judgment entered against the defendant Emmons Coal Mining Company, which brings error.

*Affirmed.*

*Wm. MacDonald, L. J. Foreman* and *Conlen, Brinton & Ackers,* for plaintiff in error.
*R. D. Heironimus,* for defendant in error.

MEREDITH, JUDGE:

Defendant, Emmons Coal Mining Company, complains of a judgment entered by the circuit court of Mineral county in an action of trover and conversion of two United States Liberty Bonds. Both John Summerville and the Company were made defendants. The case was tried by Honorable Taylor Morrison, Special Judge, in lieu of a jury; after the testimony was introduced, the defendant company demurred to the evidence. The court dismissed the action as to Summerville, overruled the demurrer, and entered judgment against the Company for $104.66.

In July, 1918, the defendant, Summerville, and plaintiff, Myers, were working for the Company at Bayard, West Virginia, Summerville as superintendent of the Company's mining operations there and Myers as blacksmith. On the 31st day of July, plaintiff was arrested, taken before a justice in Grant county, fined and required to give a peace bond in the penalty of $100.00 for the period of one year. Superintendent Summerville signed the bond as surety and Myers was released. Myers deposited two United States Liberty Bonds of the par value of $50.00 each, as indemnity, to be returned at the end of the year unless the peace bond should be forfeited. It is not clear whether the two bonds were delivered to Summerville by Myers, or whether they were deposited by Myers with Vernon Adams, who was the paymaster, and one of the company's bookkeepers in its office. It is clear, however, that the bonds were, at Summerville's direction, placed in an envelope, Myers' name was written on it, and the package was deposited in the Company's safe by Adams, and that at that time Summerville told Adams why these bonds were taken and why they were to be placed in the safe, of which Adams had charge. One, I. M. Long, at this time was also employed in the office as manager of the Culpepper Supply Company, and had access to the safe. Just what the business of the Supply

Company was, the record does not disclose, but it was probably the merchandise branch of the mining business. Summerville and Myers continued to hold their positions with the Company until some time in November, 1918. About the time the peace bond expired Myers met Summerville, who asked plaintiff if he had got his bonds, and upon his stating that he had not, he was told by Summerville that he had left them with the Coal Company. When the time was up he obtained a release from the justice, and presenting it at the Company's office, demanded his bonds. It appears that Adams and Long were not then in charge of the office, but the superintendent in charge as well as the clerk and store manager looked through the safe and could not find any bonds belonging to plaintiff. Plaintiff wrote to Summerville about it, who, instead of replying to Myers, wrote to the Company, whose main office is in Philadelphia. The Secretary-Treasurer of the Company, J. G. Emmons, answered that he had taken the matter up with his superintendent and Louis Clark (evidently another employee), and that they stated they had never seen these bonds; that when "We" (meaning the two Emmonses) "went through the safe just before you left, I did not see any bonds which belonged to Myers. I would suggest that you ask Vernon Adams. He may be able to give you some information." The letter written to the Company by Summerville, to which the above quotation is in part a reply, does not appear in the record, though the Company admits it had it when the depositions of the president, L. C. Emmons, and its Secretary, J. G. Emmons, were taken. There is nothing in this reply repudiating the act of Summerville in going upon the peace bond, or in accepting the collateral security, or in depositing the bonds with the Company's paymaster in its safe.

The evidence shows that Myers was a valued employee of the Company, and that at the time Summerville went on his bond, employees were hard to obtain; that Summerville had the right to hire men and that he went on the bond, not because of any personal interest in Myers, but solely in the interest of the Company. He does not attempt

to show, however, that he was authorized in that manner to bind the Company on the bond or to accept collateral security and deposit it for safekeeping with the Company and thus bind it as pledgee or to accept it as bailee. J. G. Emmons, secretary-treasurer and Louis C. Emmons, president of the Company, both testitfy that they were present in the Company's office when Summerville was discharged, and that they went through the safe and found no bonds of any kind there; that their attention was not called to this transaction then by Summerville, who was present, nor until more than a year afterward, when he wrote the letter already mentioned. Strange it is that neither party placed Adams or Long on the witness stand. The absence of this testimony is not accounted for. These two men had access to and charge of the safe. Summerville swears he saw Adams write Myers' name on the envelope, place the bonds in it and deposit the package in the safe. We think this can be fairly inferred from his evidence. How or when the bonds were taken out of the safe does not appear. Summerville swears he never got them and so does the plaintiff. True, Summerville was present when the safe was examined by the Emmonses at the time of his discharge, and he said nothing about the bonds then, but defendant's counsel cross-examined him and did not ask him why he did not call the attention of the Company's officers to the deposit of the bonds. At that time he may have forgotten to mention the matter. The Company tries to place the blame on Summerville, who, as the officers of the Company testify, had no authority to execute the peace bond for it nor to accept for deposit the two bonds in suit. They do not, however, deny in any way that Adams, the paymaster, who had charge of the local office, had authority to accept these bonds. Just what his duties were are not clear, but we can safely assume that they were the duties usually performed by such employees in and about mining operations, and such additional duties as might be entailed because the Company's principal office was in a distant state. This fact might with reason be considered as giving him more latitude in the discharge of his duties, and as adding

to his responsibilities. He had charge of the safe and in the course of his employment could determine what should be placed in it. He was fully informed by Summerville why the bonds were being turned over to the Company and what was to be done with them. All this was done in the interest of the Company. So far as the record shows, neither Summerville nor Adams had any personal interest to serve in keeping Myers out of jail. Under the circumstances, we think that Adams, in accepting the bonds and placing them in the Company's safe, whether he received them direct from Myers or from Summerville, was acting within the apparent scope of his authority, and notice to him of the receipt of the bonds was notice to his principal. Both were acting for the Company. Had the chief officials of the Company been fully informed of all the facts, we have no doubt they would have ratified and approved their acts. Coal mining employees were hard to obtain and often harder to keep. There was great demand for them then, and the Company doubtless got the full benefit of Summerville's act in going on the peace bond. It obtained Myers' services because of that act, and at a time when they were most needed, and it was because of that that the Company obtained the bonds in suit. We admit this is a close case, but the Company having received the benefits of an act of its agent, should not be allowed to repudiate that act, without restoring what was received by it. By so holding the ends of justice will be served. The Company made no effort to show how it lost the bonds, though had it called Adams as a witness it could doubtless have done so. All it did was to show that it did not have them, and said nothing as to the authority of Adams. It offered no excuse for their loss. It offered no evidence as to the degree of care that was taken, either of its own property or of the bonds in suit. If the bonds be regarded as a pledge to the Company, then it was bound to return them or pay for them. On the other hand, if they be regarded merely as a bailment, and the Company as a gratuitous bailee, demand therefor having been made by the plaintiff before suit, we think upon the authority of *Beardslee* v. *Richardson,* 11 Wend. (N. Y.) 25, 5 Am. Rul. Cas.

1057, that the defendant should have shown some excuse for its failure to produce the bonds upon demand. The court having ruled adversely to defendant upon its demurrer to the evidence, we can not say its judgment is wrong. We, therefore, affirm the judgment.

*Affirmed.*