MATTIE WOLFE *v.* OHIO STATE LIFE INSURANCE COMPANY

(No. 7461)

Submitted May 9, 1933.    Decided May 30, 1933.

(Rehearing denied August 1, 1933)

*R. P. Asbury* and *Paul W. Scott,* for plaintiff in error.

*Sherman H. Ballard* and *Cyrus W. Hall, Jr.,* for defendant in error.

KENNA, JUDGE:

Mattie Wolfe brought notice of motion in the circuit court of Kanawha County, West Virginia, against Ohio State Life Insurance Company upon a policy of insurance issued to him by the defendant on February 9, 1931, which provided for a monthly accident indemnity of $100.00 and that the company would pay ''double the amount of indemnity otherwise payable if the accident causing disability was sustained * * * (5) in consequence of a stroke of lightning''. The account filed with the notice was for ten months disability upon the double indemnity basis beginning in August, 1931, and ending in May, 1932, in the aggregate of $2,000.00. Defendant filed its specifications of defense, relying (1) upon lapse of the policy by reason of plaintiff's failure to pay the premium due at noon August 1, 1931; (2) failure to submit monthly reports as provided in paragraph 13 of the policy; (3) that the disability suffered by plaintiff was not total and permanent; (4) that the accident was not caused by a stroke of lightning. In a special replication to the specifications of defense, plaintiff alleges that defendant waived prompt payment of premiums through a course of dealing by which it led the plaintiff to believe that payments would be accepted from the 3rd to the 11th of the month. To the second assigned defense, plaintiff says that defendant is estopped because liability under the policy was refused. To the third assignment the reply is a direct traverse, as is the fourth. Issue seems to have been joined at this point, although the record shows a ''demurrer and general replication to the general replication to plaintiff's special replication to specification of defense''. All matters of law and fact were submitted to the court, both sides waiving a jury. The court expressly found

that the company, by its course of dealing, had waived the delayed payment of premium and that while the policy was in force and effect plaintiff sustained injuries in consequence of a stroke of lightning which rendered him totally disabled from the first day of August, 1931, to the first day of May, 1932, and accordingly rendered judgment in favor of the plaintiff for $1800.00. The proof shows that the defendant did, in fact, repudiate liability and so waived required reports under paragraph 13 of the policy.

Six points of error are assigned, but boil themselves down to three: (1) that the proof does not justify the finding that the accident was caused in consequence of a stroke of lightning; (2) that the proof does not justify the finding of the court that the defendant had waived prompt payment of premiums because the agent to whom the premiums were paid had no authority to enter into an agreement with Wolfe that he would come to collect them, and (3) that his agreement and conduct under it, even though authorized, was not sufficient to estop the defendant from declaring a forfeiture of the policy under its terms.

We think the evidence sufficient to clearly justify the finding of the court that the accident was caused by a stroke of lightning. The plaintiff was employed at the plant of the West Virginia Water Service Company on Slack Street in the city of Charleston. On the evening of the accident, at about five o'clock, he was at the plant and standing near what is called a "starting compensator". The testimony shows that this compensator contained a quantity of oil which would generate gas, and, under certain circumstances, would explode. This compensator was connected with one of the power lines of the company. The testimony is not clear as to just what its function was. Beyond the compensator the switches in the power line were open so that no ordinary current could pass through from the outside. A severe electrical storm arose. The testimony of the plaintiff's witnesses is that simultaneously with a particularly severe clap of thunder and a vivid bolt of lightning in the immediate vicinity of the plant, the starting compensator did explode, throwing an intensely hot flame across the room in which plaintiff was standing and burning him severely. The testimony further shows that a

heavy charge of static electricity, such as would result from a flash of lightning striking the power line, would travel along it, jump the open switches, and cause an explosion of the starting compensator. It is true that the witnesses who gave this testimony were not qualified as to theoretical knowledge of electrical matters. They were, however, men who, from their employment, were experienced in practical familiarity with apparatus of the kind in question. They were eye witnesses to the accident. Their testimony was not contradicted, nor did the defendant offer any testimony as to the cause of the explosion, which was an unquestioned fact. The circumstances surrounding the explosion, therefore, went to the court solely on the plaintiff's theory of the case. The court might easily have inferred, without the objectionable expression of opinion from these witnesses, and solely from the undisputed circumstances put before it, that the explosion in the starting compensator was in fact caused by the lightning. *Carpenter* v. *Security Fire Ins. Co.*, 183 Ia. 1226, 168 N. W. 231; *Lyons* v. *Farm Property Mutual Ins. Ass'n. of Iowa*, 188 Ia. 106, 176 N. W. 291; *Hartford Fire Ins. Co.* v. *Cincinnati Ice Mfg. etc. Co.*, 9 Ohio App. 403; *Farber* v. *Boston Ins. Co.*, 215 Mo. App. 564, 256 S. W. 1079. We are of opinion, therefore, that any technical error that might exist on the basis of opinion evidence from witnesses not qualified to give opinions was not prejudicial to the defendant.

As to the waiver by the company of the delayed payment of premiums, L. H. Jarrett was the agent of the company with whom the plaintiff dealt in making his application for the policy and the payment of his premiums. The company had a written contract with Jarrett by which it expressly made him its agent "to attend to the collection of all premiums". In acknowledging the last payment of premium received August 5th, the home office sent to Wolfe a postal card stating that the next ensuing premium "may be paid to our local collector". These two things taken in conjunction undoubtedly are sufficient to show that Jarrett had authority from the company to attend to the collection of its premiums and that Wolfe could accept him as being so authorized. By the express terms of his written contract with the company, he was made a solicitor of policies and as such he worked

under their agent Holcomb from the office in Charleston. It would appear, therefore, that any reasonable inference would be to the effect that the company expected Jarrett to attend to the collection of premiums on his rounds as a solicitor for the company. This, apparently, is exactly what he did. He and Wolfe both testified that when Wolfe made his application for the policy, which was done at plaintiff's place of employment, Jarrett had agreed that on subsequent premium payment dates he would call and collect the premiums. The testimony is that Wolfe paid promptly on all occasions when Jarrett called to collect premiums, and that he did call on each occasion several days later than when the premium was due, according to the contention of the defendant, that is to say, the first of the month. His calls were made from the 3rd to the 11th of the month, and each time he received a premium payment which was forwarded to the company and the policy kept in effect. True, there is a stipulation in the policy that a premium paid after its due date shall have the effect of reinstating the policy from the date of the payment only. A requirement of the company, however, is that upon reinstatement, the insured must sign a blank form requesting reinstatement which must be taken by the agent and forwarded to the company. This was not done. So, apparently, the belated premiums paid by Wolfe were not treated as constituting reinstatements. As a matter of fact, they were reported to the company by the office of Holcomb as having been paid on the first of each month. This was possible because the reports of premium collections did not have to be made until the 10th of each month. Therefore, in making remittances the premiums paid by Wolfe were reported as having occurred on the first. We do not believe, however, that Wolfe was bound by this circumstance as between the company and its agent. He was privileged to deal with the agent on the basis of what the company held him out to be. *Coles* v. *Jefferson Ins. Co.,* 41 W. Va. 261, 23 S. E. 732; *Myers* v. *Summerville,* 90 W. Va. 486, 111 S. E. 487; *Mutual Life Ins. Co. v. Brown,* 137 Va. 278, 119 S. E. 142. In addition, to treat these payments as being reinstatements only that put the policy back into effect upon the date of payment, would mean either that the company has actually been paid for a considerable period of time

during which it carried no risk for its insured, or that the policy, upon each payment, was to be carried for one month from that date. We are of opinion that by reason of the conduct of the company, through its duly authorized agent, in accepting premium payments for March, April, May, June and July on dates ranging from the 3rd as late as to the 11th and apparently keeping the policy in force, it has waived prompt payment of premiums received within the range of the dates of such belated payments already accepted by it, and is bound by the premium paid by Wolfe on August 5th (after the accident on August 1st) which they accepted and have retained.

For the foregoing reasons, we are of opinion to affirm the judgment of the trial court, making it unnecessary at this time and in this state of the record to consider two additional points that appear in the case. The first of these is that the policy contains the following provision: That in consideration of the premium paid initially, the policy is to be in effect "until twelve o'clock noon, such standard time, of the first day of March, 1931, and for *such time thereafter as the premiums paid by the insured as herein agreed will maintain this policy in force.*" A full month's premium was collected when the policy was written on the 9th day of February, 1931. Under the language quoted above, it would appear that this full month's premium could have and should have carried the policy in effect until the 9th day of March, 1931. Therefore, the premium paid in March would carry the policy until the 9th of the next ensuing month and so on. If this be true, then the last payment made August 5, 1931, came in due time and of course the company would be bound by the payment. The second question unnecessary to be taken into consideration in view of the basis upon which the case is decided is, whether or not the company in having accepted the last premium paid August 5, 1931, and in having retained that premium after full knowledge of all of the circumstances of the case and even after trial, is now bound by its acceptance and retention thereof and cannot be heard to deny its liability.

*Affirmed.*