JOHN W. LOHR FUNERAL HOME, INC., *a Corporation*

*v.*

THE HESS & EISENHARDT COMPANY, *a Corporation*

(No. 12731)

Submitted January 28, 1969.     Decided March 11, 1969.

724

*Hyer, Gibson & Talbott,* for appellant.

*Bonn Brown,* for appellee.

BERRY, JUDGE:

This is an appeal by the defendant, Hess and Eisenhardt Company, an Ohio Corporation, hereinafter referred to as H&E, from a judgment of the Circuit Court of Randolph County of June 22, 1967 in the amount of $7500, resulting from the defendant's refusal to deliver a custom-built funeral coach which the plaintiff, John W. Lohr Funeral Home, Inc., a West Virginia corporation, had ordered from the defendant's distributor. The plaintiff entered into a contract with the defendant's distributor to buy a new $13,000 vehicle and traded in a similar used vehicle for which the plaintiff was to receive a credit of $7500. The distributor was adjudged a bankrupt and as a result the defendant refused to allow the $7500 credit for the used vehicle in accordance with the plaintiff's agreement with the distributor. Liability on the part of the defendant depends on whether the distributor was an independent contractor or an agent of the defendant.

Upon application to this Court an appeal and supersedeas were granted March 11, 1968 to the judgment of the trial court and the case was submitted for decision on arguments and briefs at the January Regular Term, 1969.

The defendant operates a business at Rossmoyne, a suburb of Cincinnati, Ohio, in which it is engaged in building cus-

tom-made vehicles. It could be classified as a manufacturer although it did not make the chassis and motor upon which it placed its handcraft body. The chassis and motor are obtained from automobile manufacturers such as the Cadillac and Pontiac divisions of General Motors. The defendant built bodies for the special requirements of buyers which are placed on the chassis consisting of the frame, front fenders, motor and hood, and the bodies are built to the specifications of the buyer and blended into the shape of the chassis. These custom-made products are sold throughout the United States and some are shipped to foreign countries. The defendant marketed its products through distributors who were given franchises for different areas throughout the country. The contract entered into between the defendant and the distributor clearly made the distributor an independent contractor and not an agent or employee of the defendant. This contract styled "Distributors Selling Agreement" contained the following general provision number 22 with respect to this matter: "This agreement, of which these terms and conditions are a part, does not constitute Distributor the agent, legal representative or employee of H&E for any purpose whatsoever. Distributor is not granted any expressed or implied right or authority to assume or to create any obligation or responsibility in behalf of, or in the name of H&E, or to bind H&E in any manner or thing whatsoever." In the following section it is specifically provided that the defendant was not liable for the distributor's commitments in the following language: "* * * Distributor shall be solely responsible for any and all obligations or responsibilities incurred or assumed by Distributor in the performance of this agreement, irrespective of any suggestion or recommendation with respect thereto by H&E or any of its employees or representatives."

The contract or selling agreement was of course only between the defendant, the manufacturer, and the distributor, and there is no evidence in this case that the plaintiff had any knowledge of the contract between H&E Company and the distributor. The distributor who had the franchise to sell the defendant's product in the area in which the defendant conducted its business was a man by the name of

Carmen R. Sample who did business under the name of S&S Sales at Pittsburgh, Pennsylvania. The S&S name was a trade name used by the defendant and known throughout this type of business as Sayres and Scovill which was the name of the company engaged in the same business as the predecessor to the defendant. The manner in which these custom-made vehicles were obtained was to place an order with a distributor specifying the specific or individual requirements desired and this was followed by a similar order from the distributor to the manufacturer, the defendant in this case, containing the desired special requirements. Sometimes the order from the distributor to the manufacturer would be accompanied by the first, or purchaser's order, containing the details for the special-made vehicle. The defendant prepared forms to be used by its distributors for these orders. The purchaser's order referred to above contained at the top the words "New Car Order" followed underneath by the words "Sayres and Scovill Built by the Hess & Eisenhardt Co." with the address of the manufacturer. At the beginning or underneath the above heading in the body of the order was a line labeled "Distributor" and "Distributor's Address." The remainder of the form provides for information with regard to the details relative to the special requirements, the place and manner of delivery, the allowance for the used car terms and charges. It contains a space for the purchaser's signature and a space for the acceptance by the distributor. No statement is contained in this order relating to agency as between the distributor and the manufacturer. The plaintiff had made purchases of these custom-made vehicles on several occasions in previous years from the same or other preceding distributors of the defendant. Various methods of payment and delivery of the vehicles were used on these occasions. Payments were either made to the distributor and the vehicle delivered by the distributor, or payments were made by the purchaser at the factory and delivery made at the factory, and the custom was for the payments and delivery to be made as desired by the purchaser and the only requirement of the manufacturer was to have the assurance that the vehicle would be paid for. Regardless of how the payment was

made by the purchaser, the manufacturer and distributor made a settlement between themselves with regard to the division of money paid for the vehicle. The distributor disposed of any used vehicle for which he had given credit as a trade-in on a new vehicle. The title to any used cars taken as a trade-in was assigned by the purchaser to the distributor.

The defendant's products were displayed at funeral directors' conventions by arrangements made with the distributor, and the defendant's literature was distributed at these conventions. There were both national and state conventions and the defendant denied having anything to do with the conventions except to help the local distributor with the expenses of displaying its literature and forms but most of the expense was borne by the distributor. The defendant had no place of business in West Virginia nor in any other state except Ohio. All of their products were manufactured at their home office in Rossmoyne, Ohio.

In the transaction involved in the case at bar the plaintiff placed an order with the distributor Sample on July 16, 1965 and traded to him in this transaction a used Miller & Meteor vehicle (a competing make) which the plaintiff had obtained from another funeral director who had become associated with the plaintiff. John W. Lohr, of the plaintiff corporation, having heard nothing with regard to the order for several weeks called the manufacturer and spoke to Mr. Charles Eisenhardt of the defendant company who informed him that the defendant company did not receive the order until about August 24, 1965; that it was irregular inasmuch as the required deposit was not made by the distributor. It appears that the distributor had given the defendant a check and it had been returned because of insufficient funds. Mr. Eisenhardt told Mr. Lohr that he would get the distributor Sample in the office and call Lohr which was later done. Mr. Lohr stated he received a call from the defendant's factory in October where Sample was present and talked with Mr. Sample who told him that he was leaving the required deposit and that he had disposed of the vehicle traded in by the plaintiff in another transaction but had

taken notes for the used vehicle traded in by the plaintiff. The plaintiff later learned that this statement by Sample was not true when he contacted the party to whom Sample had sold the car traded in by the plaintiff who advised him that he had already paid Sample for the used car. Mr. Lohr testified that he called Mr. Eisenhardt again and he said he [Lohr] would be taken care of and that this was repeated on several occasions. Later, after these conversations, a Mr. Johnson from the factory of the defendant came to see the plaintiff and advised him that they had been unable to locate Sample and talk to him about the order for the new vehicle. Mr. Johnson had also previously discussed an order taken by Sample at a funeral home in Donora, Pennsylvania, for a vehicle about the same time. The plaintiff testified that upon receiving information indicating that Sample was in financial difficulty, Lohr again called Mr. Eisenhardt who told him that he could not understand why Sample was in such difficulty as he had paid Sample over $10,000 a year plus commissions on sales amounting to a total of either $11,000 or $16,000, and that Sample had some difficulty with the Internal Revenue Service for the non-payment of income taxes, but again told him that they would take care of him. Mr. Eisenhardt denied making any statements to Mr. Lohr indicating that the factory would stand behind the contract the plaintiff had with the distributor, or absorb the loss the plaintiff had suffered. However, he did state that they would sell the plaintiff the vehicle in question at their cost of approximately $10,500, which offer was rejected by the plaintiff. Mr. Eisenhardt advised the plaintiff to file a claim in the distributor Sample's bankruptcy proceeding as it was listed as a creditor. The plaintiff did not file a claim in the bankruptcy proceeding against Sample but instituted this action against the defendant to recover the $7500 allowed by Sample for the used vehicle traded to him at the time the order for the new vehicle was taken.

The defendant, a foreign corporation, had never qualified to do business in West Virginia and the summons was served on the State Auditor under the provisions of the statute making the defendant liable for contracts made in West Virginia even though the defendant was not authorized

to do business in the state. The contract to purchase the new vehicle made between the plaintiff and the distributor was signed in West Virginia. A motion to quash the return of service was made by the defendant at the beginning of the trial, at the conclusion of plaintiff's evidence, and at the conclusion of all the evidence, and a motion for a directed verdict was made by the defendant at the conclusion of all the evidence.

The assignments of error by the defendant are that: (1) the trial court erred in refusing to grant the defendant's motions to dismiss the action or quash the return of service, and to quash the return and direct a verdict for the defendant at the conclusion of plaintiff's testimony and at the conclusion of all the evidence, (2) the trial court erred in submitting to the jury the question of apparent authority of Sample as its agent when the record contained written evidence of his authority, (3) the trial court erred in giving plaintiff's instruction number 1 and in refusing to give to the jury instructions 1 and 4 offered by the defendant, and (4) the verdict is contrary to the law and evidence.

All of the assignments of error are based on whether Sample was held out by the defendant to be its agent in the transaction with the plaintiff, or whether the acts of Sample in such transaction were ratified by the defendant as acts of its agent.

The contract or selling agreement between the defendant and the distributor Sample shows by the clear language contained therein that Sample was not the agent of the defendant in the sale of its products. The burden of proving that Sample was acting as an agent of the defendant in the transaction in the instant case, either by the defendant holding Sample out as its agent or ratification of his acts by it, rests upon the plaintiff. 1A M. J., Agency, §111; *Bluefield Supply Co.* v. *Frankel's Appliances, Inc.* 149 W. Va. 622, 142 S. E. 2d 898. This principle is succinctly stated in point 3 of the syllabus of the *Bluefield Supply Co.* case in the following language: "The law indulges no presumption that an agency exists; on the contrary a person is legally presumed to be acting for himself and not as the agent of another

person; and the burden of proving an agency rests upon him who alleges the existence of the agency." It has also been held that a person who deals with one alleged to be an agent is bound at his own peril to know the authority of such alleged agency. *Bluefield Supply Co.* v. *Frankel's Appliances, Inc., supra.* This principle is stated in point 1 of the syllabus of *Rosendorf* v. *Poling,* 48 W. Va. 621, 37 S. E. 555, in the following words: "Where a person deals with an agent, it is his duty to ascertain the extent of the agency. He deals with him at his own risk. The law presumes him to know the extent of the agent's power; and, if the agent exceeds his authority, the contract will not bind the principal, but will bind the agent."

It has been held that the act of an agent within the apparent scope of his authority binds his principal. *Myers* v. *Summerville,* 90 W. Va. 486, 111 S. E. 487. Apparent authority is discussed in 3 Am. Jur. 2d, Agency, §73, wherein it is stated: "Apparent authority, or ostensible authority, as it is also called, is that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing. In effect, therefore, an agent's apparent authority is, as to third persons dealing in good faith with the subject of his agency and entitled to rely upon such appearance, his real authority, and it may apply to a single transaction, or to a series of transactions."

The facts in the case at bar do not warrant the application of the principle of apparent authority on the part of the defendant's distributor when he entered into the transaction with the plaintiff to sell the custom-made vehicle. The evidence does not indicate that anything was done or said on the part of any person at the time of the transaction involved in this case or before to indicate that the defendant knowingly permitted Sample to exercise such authority as defendant's agent or to hold himself out as possessing such authority. The title to the used vehicle was assigned in the name of the distributor Sample and not the defendant. It was delivered to Sample who contracted with the plaintiff to allow $7500 as the trade-in value of the used vehicle without consulting the defendant, and the used vehicle was

delivered to the distributor before obtaining possession of the new vehicle which is the usual custom when a trade-in is made for the purchase of a new vehicle, all of which gave the distributor the opportunity and legal right to dispose of the vehicle which was done by him, and as the result thereof, he obtained the money from the sale of the used vehicle and retained it without the allowance of any credit at the factory for the new vehicle. The transaction in the case at bar is similar in all respects to the purchase of an automobile from a dealer representing one of the automobile manufacturers. If a trade-in is made on a standard automobile such as a Chevrolet, Buick or Cadillac the new automobile is delivered to the purchaser and the purchaser is allowed the credit for the used vehicle traded in. If a specific car is ordered the dealer would either have to obtain it from the factory or make arrangements for the purchaser to obtain it at the factory. However, the factory or manufacturer of the automobile would have to be paid for the car either by the dealer or the purchaser, and the purchaser would look to the dealer with whom the contract was made if any discrepancy was involved with regard to the trade-in allowance for the used vehicle, and not to the manufacturer. "An implied agency is an actual agency, while an agency by estoppel is no agency at all, but the one assuming to act as agent has apparent or ostensible, although not real, authority to represent another." 2 C. J. S., Agency, §23g.

The plaintiff relies on the case of *General Electric Credit Corp. v. Fields,* 148 W. Va. 176, 133 S. E. 2d 780, for the principle of apparent or ostensible authority creating apparent agency and in such case the principal is estopped to deny the agency relationship. In that case monthly payments were made directly to the dealer, the Cook Appliance Center, who sold the product to the purchaser Fields, the payments were accepted by the General Electric Credit Corporation from the dealer as its agent to receive and remit installment payments until the dealer failed to remit such payments and apparently went out of business. It was only then that the General Electric Credit Corporation advised the purchaser that it was no longer responsible for payments made to the Cook Appliance Center. It was held

in that case that the communication strongly indicated an effort to terminate an agency relationship, which, before the failure to receive monthly installment payments, had been deemed satisfactory. It was held in the first point of the syllabus in the *General Electric Credit Corporation* case that: "One who by his acts or conduct has permitted another to act apparently or ostensibly as his agent, to the injury of a third person who has dealt with the apparent or ostensible agent in good faith and in the exercise of reasonable prudence, is estopped to deny the agency relationship." Therefore, the General Electric Credit Corporation could not prevail in an action to compel the purchaser Fields to make additional monthly payments to it on an outstanding obligation which he had previously made to the Cook Appliance Center in good faith and with the apparent approval and acceptance of the plaintiff. This is the theory upon which the plaintiff proceeded in the instant case as is clearly indicated by instruction number 1 offered by the plaintiff and given by the court.

The facts in the case at bar are entirely different from those in the *Fields* case because there is no evidence to indicate that the defendant, H&E Company, held the distributor Sample out as its agent and permitted him apparently or ostensibly to act as its agent. In fact, the evidence is to the contrary, because it clearly shows that the plaintiff made the contract with the distributor to obtain the defendant's product, and it was not made with the defendant. The arrangements for the trade-in of the used vehicle were made with the distributor, the allowance thereon fixed by the distributor, the title thereto taken in his name and there was no indication at any time that the defendant held its distributor out as its agent. The contract between the defendant and the distributor clearly indicates that the defendant did not intend to have the distributor act in any manner as its agent. Therefore, the case at bar does not fall within the classification of apparent or ostensible agency.

The only theory upon which the case presented here could rest with regard to agency would be ratification of the acts of defendant's distributor as its agent. This is obvious

because there was no evidence indicating that the defendant held him out as its agent and permitted him to act with apparent or ostensible authority as such at the time of the execution of the contract of sale of the new vehicle but there is evidence of the plaintiff attempting to prove ratification of the acts of defendant's distributor as its agent, because the plaintiff testified that the defendant on several occasions said that the plaintiff would be taken care of. This was, of course, denied by the defendant, and although the defendant admitted having through its officer telephonic conversations with the plaintiff, the only manner in which it could be argued from its testimony that it ratified Sample's actions was that the officer offered to allow the plaintiff to obtain the new vehicle at cost which offer was refused by the plaintiff. The defendant denied any agency on the part of the distributor and stated that the contracts were made between the distributor and the purchaser, that they never obtained any title to a vehicle traded in on the purchase of a new car. Even accepting plaintiff's version as true that it would be "taken care of", such an expression is too indefinite to indicate ratification without more positive action. Ratification usually occurs by accepting the fruits of the transaction, and is the adoption of an agency where none existed. 3 Am. Jur. 2d, Agency, §160.

It has been held that the ratification by the principal of an unauthorized act of an agent (or even the act of a stranger) may in some instances be effected contrary to the real intention of the principal; however, ratification by the principal of the act of the agent is ordinarily presumed to be based on the intention of the party. *Payne Realty* v. *Lindsey*, 91 W. Va. 127, 112 S. E. 306; *Rees Electric Co.* v. *Mullens Smokeless Coal Co.*, 141 W. Va. 244, 89 S. E. 2d 619. The evidence in the instant case does not indicate that the defendant intended to ratify the unauthorized acts of its distributor. It clearly shows the opposite, that, instead of any intention on its part to ratify any acts on the part of its distributor it intended to repudiate them, and the plaintiff was so advised, according to the evidence of the defendant. Furthermore, the defendant did not receive any fruits of the transaction. It has been repeatedly held that

the burden of proving such matters rests upon the person asserting them. *Rees Electric* v. *Mullens, supra.*

Although the evidence in this case indicates the only theory upon which agency could be established was ratification, the only instruction offered on this theory was instruction number 4 offered by the defendant to the effect that if the agent exceeded his authority the principal could be bound only by ratification which was refused by the court. Instruction number 1 offered by the plaintiff dealing with apparent or ostensible authority is not based on the evidence and should have been refused but was given. The verdict of the jury was without sufficient evidence to support a finding on the theory of ratification of the acts of the distributor as an agent whether or not any instruction was given and as such finding would clearly be plainly against the decided weight and preponderance of any conflicting evidence the verdict upon proper motion should have been set aside by the trial court. *Ward* v. *Smith,* 140 W. Va. 791, 86 S. E. 2d 539; *Toppins* v. *Oshel,* 141 W. Va. 152, 89 S. E. 2d 359; *Rees* v. *Mullens, supra.*

Inasmuch as it appears from the evidence that the defendant was not a party to a contract made in West Virginia, was a foreign corporation which had not qualified to do business in this state, had no place of business located within the state, and there was an absence of minimum contacts required for courts in this state to have jurisdiction over foreign corporations in order for process to be served on the Auditor under the provisions of Code, 31-1-71, as amended, the defendant's motion to quash the return of service should have been sustained by the trial court. *Hodge* v. *Sands Manufacturing Co.,* 151 W. Va. 133. 150 S. E. 2d 793. The general rule with regard to such statutes (Code, 31-1-71, as amended) is that they must be strictly construed in favor of the nonresident. 23 A. L. R. 3rd, at page 571. The *Hodge* case is somewhat similar to the instant case and the holding in such case is applicable here. In that case it was held that where a product was manufactured by the defendant outside the state and sold to a dealer in the state, such product was purchased through the dealer only, and

the defendant had no other contacts with the state, the state court was without jurisdiction over such foreign corporation to entertain an action instituted by a resident plaintiff to recover damages from the defendant foreign corporation.

For the reasons stated herein the motion to quash the return of service should have been sustained by the trial court when the evidence with regard to the question of agency was presented. The evidence shows that the contract for the sale of the new vehicle was not made with the defendant or an actual agent of the defendant, and the evidence is insufficient to establish that an apparent or ostensible agency created an estoppel on the part of the defendant forbidding it to deny such agency, or to establish a ratification of the acts of the distributor to constitute him an agent in connection with the contract to purchase a new vehicle.

The judgment of the Circuit Court of Randolph County is therefore reversed and a new trial awarded to the defendant.

*Reversed; new trial awarded to defendant.*