960 F.2d 146
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
FOX GROCERY COMPANY, a West Virginia corporation; Wetterau,
Incorporated, a Missouri corporation, Plaintiffs-Appellees,
v.
MINERAL LABS, INCORPORATED, a Kentucky corporation; Wal Lyn
Management, Incorporated, a Kentucky corporation;
Henry H. Lyon, Defendants-Appellants.
 No. 91-1643.
 United States Court of Appeals,
Fourth Circuit.
 Argued: February 3, 1992
Decided: April 27, 1992
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Huntington. Charles H. Haden, II, Chief United States District Judge. (CA-89-408-3)
 Argued: Rebecca Louine Stafford, Goodwin & Goodwin, Charleston, W.Va., for appellants.
 John Earl Jenkins, Jr., Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, W.Va., for appellees.
 On Brief: John M. Poma, Jenkins, Fenstermaker, Krieger, Kayes & Farrell, Huntington, W.Va., for appellees.
 S.D.W.Va
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before SPROUSE, WILKINSON and WILKINS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 The appellants, Mineral Labs, Inc., Wal-Lyn Managements, Inc., and Henry Lyon (hereafter Mineral Labs), appeal the judgment of the district court granting Fox Grocery Company and Wetterau, Inc. (hereafter Wetterau) specific enforcement of an agreement which settled litigation between the parties. In its appeal, Mineral Labs contends that there was no agreement because Paul Brown, a party to the settlement agreement who was not involved in the ongoing litigation, did not sign the agreement. Wetterau, in support of affirmance, argues that Mineral Lab's attorney, J. Scott Preston, had authority to act for Brown and orally agreed to the terms of the settlement. We affirm in part, reverse in part, and remand for an evidentiary hearing.
 
 
 2
 * Fox Grocery Company, a subsidiary of Wetterau, Inc., is a wholesale supplier of groceries operating in West Virginia and Kentucky. Mineral Labs and Wal Lyn are corporations which operate grocery stores in Kentucky in an area adjacent to West Virginia. Henry Lyon was a principal stockholder in Mineral Labs. Wetterau and Mineral Labs entered into contracts that involved supplying four grocery stores, as well as sublease arrangements and limited guaranty agreements that pertained to two of the stores. After a dispute concerning the pricing structure of the supply contract, Wetterau brought a diversity action against Mineral Labs in the federal court in the Southern District of West Virginia. Trial was set for early September 1990, but, at the joint request of the parties, the court postponed the trial to allow them to continue ongoing settlement negotiations.
 
 
 3
 As part of the settlement negotiations, the parties agreed that ownership of the stores would be restructured. Paul and his brother, James Brown, who were not involved in the original lawsuit, acquired a 75% ownership in two of the stores; Henry Lyon retained a 25% interest in them. After a meeting between the parties to the settlement agreement, John Poma, counsel for Wetterau, and J. Scott Preston, counsel for Mineral Labs, drafted a proposed settlement agreement. The basic issue presented to the trial court, and the issue we consider on appeal, is whether the agreement was consummated by all parties.
 
 
 4
 Wetterau signed the agreement. Preston apparently consulted all of the opposing parties to the agreement on December 4, 1990, and all of them signed the agreement, except Paul Brown.[1] According to Preston's representations to the district court, he spoke to Brown about the terms of the settlement and understood that Brown assented to the settlement agreement. Although Henry Lyon signed the agreement, he told Preston that his agreement was conditional upon the signatures of the other interest holders in the stores.
 
 
 5
 On December 6, Henry Lyon repudiated the contract. Wetterau then moved for an order compelling specific performance of the settlement agreement. Mineral Labs argued in opposition that the settlement agreement was not enforceable because Paul Brown had not signed it. Wetterau countered that an executed writing was unnecessary because the contract was made when the parties orally agreed to its terms. The court granted Wetterau's motion, concluding that "Preston had acted with apparent authority in binding[Brown] to the settlement agreement." On appeal, Mineral Labs argues principally that the court erred in finding that Preston acted with apparent authority on behalf of Brown. Mineral Labs also renews its argument that there was no agreement because Paul Brown did not sign the written agreement.
 
 II
 
 6
 In support of its argument that there was no agreement, Mineral Labs argues that the parties contemplated being bound only by a formally executed document. It could point to no language in the agreement, however, indicating such intent. In contrast, Wetterau relies on the written agreement, arguing that its execution date refers to the date of oral agreement, i.e., December 4.[2] The opposing attorneys apparently believed that all of the parties had reached an understanding and that the final written agreement simply memorialized the completed contract. See Blair v. Dickinson, 54 S.E.2d 828, 843 (W. Va.), cert. denied, 338 U.S. 904 (1949) ("where the parties have assented to all the terms of the contract ... the mere reference in conjunction therewith to a future contract in writing will not negative the existence of a present contract"). Oral agreements to settle litigation are, of course, enforceable. See Autera v. Robinson, 419 F.2d 1197, 1198 n.1 (D.C. Cir. 1969). Consequently, we find no error in the district court's conclusion that it was not necessary for Paul Brown to have signed the written settlement agreement-his oral acceptance of it would have been sufficient.
 
 
 7
 Mineral Labs' argument that Preston did not have authority to bind Brown to the contract, however, presents a greater problem. It is, of course, true (and the parties do not dispute) that courts have "inherent power to supervise and aid the implementation of settlement agreements in pending litigation." Wood v. Virginia Hauling Co., 528 F.2d 423, 425 (4th Cir. 1975). The issue here, however, is whether there was an agreement-specifically whether Poma had apparent authority to bind Paul Brown. It is our view that the legal principles of general agency law relating to the apparent authority of agents to bind principals generally apply to an attorney/client relationship.
 
 
 8
 Apparent authority is the power of an agent to bind a principal to a transaction with a third party in accordance with the principal's manifestations to the third party. Restatement (Second) of Agency § 8 (1958). Apparent authority is created by a principal's "written or spoken words or any other conduct ... which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." Id. at § 27.
 
 
 9
 In a recent application of the Restatement's principles and North Carolina law, this court held that the party seeking to establish the apparent authority of an attorney to reach a settlement agreement must demonstrate that the client, by conduct or statements, clothed the attorney with authority. See Schafer v. Barrier Island Station, Inc., 946 F.2d 1075, 1079 (4th Cir. 1991). Looking, as we must, to the substantive law of West Virginia, we note that West Virginia's Supreme Court of Appeals has held that apparent authority exists when the principal has knowingly permitted the agent to assume it. Thompson v. Stuckey, 300 S.E.2d 295, 299 (W. Va. 1983); John W. Lohr Funeral Home, Inc. v. Hess & Eisenhardt Co., 166 S.E.2d 141, 147 (W. Va. 1969). Applying the combined import of those principles to the facts of this case, Wetterau must prove that Brown's words or actions caused Wetterau to believe that Preston was authorized to agree to the settlement.
 
 
 10
 We are not swayed from this conclusion by Wetterau's reliance on Gilbert v. United States, 479 F.2d 1267 (2d Cir. 1973), which the trial court cited, for the proposition that a party seeking to show the attorney did not have authority carries the burden of proof because an attorney of record is presumed to have authority to settle. The Second Circuit in Gilbert did not, as Wetterau suggests, recognize a special rule shifting the burden of proof when the authority at issue is that of an attorney to settle litigation. Rather, it found it "unnecessary" to address that possibility. Id. at 1268. In addition, the cases on which that proposition rests deal solely with attorneys of record; Preston was not Paul Brown's attorney of record. Moreover, the West Virginia Supreme Court has held, in the context of the general law of agency, that the burden of proving an agency relationship rests upon the party who alleges its existence. See Lohr, 166 S.E.2d at 146.
 
 
 11
 When there is some doubt about the authority of an attorney to enter into a settlement agreement, we have held that trial courts should hold an evidentiary hearing to resolve that factual dispute. See Millner v. Norfolk & W. R. Co., 643 F.2d 1005, 1009 (4th Cir. 1981). In this case, that factual dispute hinges on the actions and conduct of Paul Brown and whether they were sufficient to lead Wetterau to believe that Preston had apparent authority to bind Brown to the agreement.
 
 
 12
 In the proceedings below, the district court considered only the affidavits of Poma and James C. Carver, President of Wetterau's Pittsburgh Division, along with Preston's memorandum representations, filed in response to Wetterau's motion for specific enforcement of the settlement agreement. Paul Brown neither testified nor filed an affidavit.[3] Moreover, the affidavit evidence reviewed by the court was, at best, equivocal. Although the final negotiations were conducted solely by Preston and Poma, there was evidence that Brown, as recently as November 28, 1990 had represented himself in his negotiations with Wetterau. Although Preston's memorandum does not deny that he was acting for Brown, neither does it state that he was Brown's attorney. These are classic circumstances requiring an evidentiary hearing to resolve the underlying factual issue. Consequently, we conclude that the district court erred in finding, without an evidentiary hearing, that Preston had apparent authority to represent Brown.[4]
 
 
 13
 In view of the above, we reverse the district court's ruling that Preston had apparent authority to bind Brown and remand the case for an evidentiary hearing on that issue.
 
 
 14
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 
 
 
 [1]
 At the proceedings below, there was some dispute over whether James Brown had signed the settlement agreement. That question appears to have been resolved as Mineral Labs no longer disputes that James Brown signed the agreement
 
 
 [2]
 The agreement states: "This Agreement entered into as of the 4th day of December, 1990,...."
 
 
 [3]
 Mineral Labs submitted the affidavit of Paul Brown with its motion for rehearing. The motion for rehearing was denied
 
 
 [4]
 We find no merit, however, in Mineral Labs' other arguments. The statute of frauds does not apply in this case because the settlement agreement required the parties to perform their obligations in less than one year
 Mineral Labs also argues that, even if Preston had apparent authority to act for Brown, he could not represent more than one principal without the consent of both of them. See Truslow v. Parkersburg Bridge & Terminal R. Co., 57 S.E. 51, 123 (W. Va. 1907). We reject this claim, however, because Mineral Labs obviously understood that Preston was negotiating the agreement on behalf of Brown. Furthermore, Mineral Labs has not intimated that there was the slightest conflict between its interests and the interests of Brown with regard to the terms of the settlement agreement.