GENERAL ELECTRIC CREDIT CORPORATION

*v.*

BOBBY E. FIELDS, *et al.*

(No. 12226)

Submitted September 24, 1963. Decided December 10, 1963.

*Arthur F. Kingdon,* for appellant.

*Paul D. Blackshear,* for appellees.

CALHOUN, JUDGE:

This case involves an action instituted in the Circuit Court of Wyoming County by the plaintiff, General Electric Credit Corporation, against the defendants, Bobby E. Fields and Ilene P. Fields, husband and wife, to recover judgment for $972.14, exclusive of interest, which was alleged by the plaintiff to be the unpaid balance of a note. The note was originally for the principal sum of $2,499.60,

dated November 10, 1958, payable in monthly installments of $69.43 each, and secured by a conditional sales contract. The note represented the price of various items of personal property purchased by Bobby E. Fields and Ilene P. Fields from Cook Appliance Center, which will be referred to herein as Cook. The note and conditional sales contract were assigned on November 12, 1958, by Cook to the plaintiff, General Electric Credit Corporation.

The effect of the trial court's holding was that General Electric Credit Corporation, the plaintiff, by a course of conduct, held out and constituted Cook as its agent to receive payments on the note from the defendants and to remit such payments to the plaintiff; that Cook eventually received payment in full from the defendants; and that this payment in full to the agent constituted payment in full to the principal. On this basis, the trial court entered judgment for the defendants and the plaintiff has appealed from that judgment to this Court.

An answer by the defendants to the complaint asserts that the balance of the note was paid by them to Cook as the "duly authorized agent" of the plaintiff. It is alleged in the answer, and not denied, that James D. Cook was the proprietor or owner of Cook Appliance Center.

The plaintiff took the depositions of Bobby E. Fields and James D. Cook pursuant to R.C.P. 26. It was agreed or stipulated that the depositions were taken for the purpose of discovery or for use as evidence on the trial of the case or both. By agreement the case was submitted to the circuit court in lieu of a jury for final decision on a record consisting of the depositions, pleadings, exhibits and two affidavits.

On August 3, 1959, Cook executed a second conditional sales contract to the defendants which purported to sell conditionally the same items of personal property which had been sold conditionally by the prior conditional sales contract. The new contract embraced six additional items of personal property purchased by the defendants from

Cook for the price of $428.95. On the date of the execution of the second contract, the balance due on the prior note was $2,221.88, but, if the note had been paid in full on that date, the defendants would have received a refund of finance charges in the sum of $202.09, making a net final payment of $2,019.79. The second conditional sales contract secured the payment of a new note executed by the defendants to Cook, apparently for the amount of the balance then owing on the prior note plus the price of the additional purchases. The second note and conditional sales contract were assigned by Cook to Appliance Buyers Credit Associates.

Both Fields and Cook testified that their agreement was that Cook would pay to the plaintiff the unpaid balance of the prior note from money received by Cook as a consequence of the assignment of the second note and conditional sales contract to Appliance Buyers Credit Associates. Cook did not do so. He did not assert any specific reason for his failure to pay the unpaid balance, but it appears from the record that he was then in serious financial straits and that as a consequence he went out of business completely in July, 1962. It is reasonably obvious that Cook's financial plight is such that it would be impossible for the plaintiff to collect from him the unpaid balance of the note which was assigned to the plaintiff. After the execution of the second contract, the defendants did not call upon the plaintiff for a surrender of the prior note or a release of the conditional sales contract lien. Cook, on June 22, 1962, executed a release of the first conditional sales contract, which had been duly recorded. The plaintiff was not notified of the second contract by defendant or by Cook. The plaintiff eventually received information of the second contract through another source.

Bobby Fields was employed by Cook, in connection with his business, to service and repair television sets. Both Fields and Cook testified that, prior to the date of the second contract, Cook deducted from Fields' earnings each month the sum of $69.43 to be paid by Cook to the

plaintiff as the installment payments became due on the note held by the plaintiff. Seven deductions of $69.43 each were made in this manner prior to the date of the execution of the second conditional sales contract. Inasmuch as the unpaid balance of the original note was $2,221.88 when the second contract was executed, it is apparent that Cook had at that time remitted to the plaintiff only four of the seven monthly installments which he had deducted from Fields' earnings.

Fields testified that neither he nor his wife made any payments directly to the plaintiff at any time. This testimony is not denied or contradicted. Inasmuch as the unpaid balance of the original note was $972.14 when the action was instituted in the circuit court, it appears that eighteen additional installments of $69.43 each were paid by Cook to the plaintiff after the second contract was executed, making a total of twenty-two installments paid by Cook to the plaintiff. There is nothing in the record from which it may be inferred that in the meantime the plaintiff objected to or failed to acquiesce willingly in the arrangement whereby Cook received from the defendants and remitted to the plaintiff the payments made from time to time on the note. Cook made monthly payments in a similar manner on the second note and contract, which were held by Appliance Buyers Credit Associates. Cook became delinquent in such payments on the second note and contract, and eventually the defendants paid the unpaid balance of that note, apparently on a compromise basis.

The plaintiff apparently sent by mail to the defendants twenty-one notices from January 21, 1960, to May 21, 1962, to notify them of the default in payment of the regular installments pursuant to the terms of the original note. Bobby Fields testified that he delivered these notices to Cook, generally without opening the envelopes in which they were contained, and that he received assurances from Cook from time to time that he would take care of the matter in accordance with his agreement with Fields. The original contract was dated November 10, 1958. The

last installment under the original note and contract was due November 22, 1961. There is nothing to indicate that any delinquency notice was sent by the plaintiff to the defendants until January 21, 1960. This tends to indicate that, in the meantime, the payments were being made by Cook to the plaintiff in a satisfactory manner. The delinquency notices sent by the plaintiff to the defendants, commencing on January 21, 1960, were sent somewhat intermittently, rather than on a regular monthly basis. This tends to indicate that, from time to time, installments were paid up to date.

The original conditional sales contract provided that installment payments were "to be made at the place designated by Seller or General Electric Credit Corporation." An affidavit made by the plaintiff's local manager stated it was permissible to pay installments in advance of their due date. On August 14, 1962, the plaintiff mailed a letter to Bobby Fields, a portion of which was as follows: "Our records show that some customers have been making their payments to the dealer. You are requested in accordance with your contract, to make future payments to General Electric Credit Corporation by mail or in person at the address shown on your coupon book and not at the dealer's store." Added as a postscript to the letter was the following language: "We Are No Longer Responsible for Payments Made to Cook's After Aug. 15, 1962." This letter has a strong tendency to show that, not only the defendants but other borrowers also, had been making installment payments theretofore directly to Cook; that Cook had been accepted by the plaintiff as its agent to receive and remit installment payments; and that after the date of the letter the plaintiff would not consider itself bound by payments received in its behalf by Cook. The letter strongly tends to disclose a belated effort to terminate an agency relationship which theretofore had been deemed satisfactory.

On the case submitted to it in lieu of a jury, the trial court found that the plaintiff was a holder of the note in due course and for value; that James D. Cook "was the

ostensible agent of the plaintiff corporation at least and that all moneys he collected which were paid by the defendants, he collected as agent for the plaintiff;" and that the money received by Cook from Appliance Buyers Credit Associates for payment of the balance owing on the original note "was received by him as the ostensible agent of General Electric Credit Corporation and that he is responsible to that corporation for the amount so collected by him, not the defendants in this case."

In this Court the plaintiff makes the following assignments of error: (1) The court's findings are plainly contrary to the law and the evidence; (2) the court erred in not finding that Fields "was equally guilty with Cook in the perpetration of a fraud upon plaintiff and another;" and (3) that the court erred in not finding that "defendants made Cook their agent to discharge plaintiff's note from the proceeds of the money received from Appliance Buyers Credit Associates."

The trial court's judgment is based on findings of fact involving proof which is without substantial dispute and we are unable to say that such judgment is plainly wrong, or against the clear weight and preponderance of the evidence.

"Payment of money to an agent, to be applied on a debt of the principal, is equivalent to payment direct to the principal, and, when paid to the agent, discharges the indebtedness to the extent of the payment." *Case* v. *Shepherd,* 140 W. Va. 305, pt. 4 syl., 84 S. E. 2d 140. "Proof of an express contract of agency is not essential to the establishment of the relation. It may be inferred from facts and circumstances, including conduct." *Cassiday Fork Boom & Lumber Co.* v. *Terry,* 69 W. Va. 572, pt. 7 syl., 73 S. E. 278. See also *Perkins* v. *Friedberg,* 90 W. Va. 185, pt. 5 syl., 110 S. E. 618. "Agency to do a particular act may be inferred from the adoption and ratification, by the principal, of acts of like kind performed for him by the agent." *Lowance* v. *Johnson,* 75 W. Va. 784, pt. 1 syl., 84 S. E. 937. " * * * The principal cannot accept

the benefits, without also bearing the burdens, of the agent's acts." *Lowance* v. *Johnson,* 75 W. Va. 784, pt. 2 syl., 84 S. E. 937. See also *Dewing* v. *Hutton,* 48 W. Va. 576, pt. 6 syl., 37 S. E. 670. "The act of an agent within the apparent scope of his authority binds the principal." *Myers* v. *Summerville,* 90 W. Va. 486, pt. 1 syl., 111 S. E. 487. See also *Adrian Buckhannon Bank* v. *Sandridge & Sandridge, Inc.,* 122 W. Va. 343, pt. 1 syl., 9 S. E. 2d 232; *Wright* v. *Shortridge,* 194 Va. 346, 73 S. E. 2d 360. "Apparent authority, or ostensible authority, as it is also called, is that which, though not actually granted, the principal knowingly permits the agent to exercise, or which he holds him out as possessing. In effect, therefore, an agent's apparent authority is, as to third persons dealing in good faith with the subject of his agency and entitled to rely upon such appearance, his real authority, and it may apply to a single transaction, or to a series of transactions." 3 Am. Jur. 2d, Agency, Section 73, page 475. "An implied agency is an actual agency, while an agency by estoppel is no agency at all, but the one assuming to act as agent has apparent or ostensible, although not real, authority, to represent another." 2 C. J. S., Agency, Section 23g, page 1050. "One who knows that another is acting as his agent or permitted another to appear as his agent, to the injury of third persons who have dealt with the apparent agent as such in good faith and in the exercise of reasonable prudence, is estopped to deny the agency." 2 C. J. S., Agency, Section 29b, page 1063. See *Dewing* v. *Hutton,* 48 W. Va. 576, 37 S. E. 670; *Union Bank & Trust Co.* v. *Long Pole Lumber Co.,* 70 W. Va. 558, 74 S. E. 674; 1 M.J., Agency, Section 25, page 293. "Agency by representation or estoppel, sometimes designated as 'apparent agency', involves a case in which there may be no agency in fact, but where the principal or employer holds out or represents a person to be his agent or employee, and a third party or parties rely thereon, in which case the person making the representation is estopped to deny the agency." *Brewer* v. *Appalachian Constructors, Inc.,* 138 W. Va. 437, pt. 8 syl., 76 S. E. 2d 916. See also *Gallagher* v. *Washington County Savings,*

*Loan & Building Co.,* 125 W. Va. 791, 800, 25 S. E. 2d 914, 919.

It is fundamental that fraud is never presumed but must be established by clear and distinct proof. *Campbell* v. *Campbell,* 146 W. Va. 1002, pt. 3 syl., 124 S. E. 2d 345; *Brown* v. *Crozer Coal & Land Co.,* 144 W. Va. 296, pt. 5 syl., 107 S. E. 2d 777. We believe that the trial court did not err in failing to find that Bobby Fields perpetrated or joined Cook in the perpetration of a fraud upon the plaintiff. *Corson Co.* v. *Hartman and Landin,* 144 W. Va. 790, pt. 3 syl., 111 S. E. 2d 346. The findings of a trial court upon facts submitted to it in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by an appellate court unless the evidence plainly and decidedly preponderates against such findings. *Cotiga Development Co.* v. *United Fuel Gas Co.,* 147 W. Va. 484, pt. 6 syl., 128 S. E. 2d 626; *Edwards* v. *Hylbert,* 146 W. Va. 1, pt. 3 syl., 118 S. E. 2d 347; *Daugherty* v. *Ellis,* 142 W. Va. 340, pt. 6 syl., 97 S. E. 2d 33. See also *Lusher* v. *Sparks,* 146 W. Va. 795, 122 S. E. 2d 609, 615. We believe that the trial court properly applied the law and that its findings of fact are justified by the evidence.

For the reasons stated, the judgment of the Circuit Court of Wyoming County is affirmed.

*Affirmed.*