SAM FOGLESONG, *Et Al.*, D/B/A
SAM FOGLESONG FUNERAL HOME

*v.*

FOGLESONG FUNERAL HOME, INC., *A Corp., Et Al.*

(No. 12339)

*and*

SAM FOGLESONG, *Et Al.*, D/B/A
SAM FOGLESONG FUNERAL HOME

*v.*

FOGLESONG FUNERAL HOME, INC., *A Corp., Et Al.*

(No. 12339A)

Submitted February 2, 1965.        Decided April 6, 1965.

*Ray Toler, C. S. Worrell,* for appellants in No. 12339A and appellees in No. 12339.

*D. Grove Moler,* for appellants in No. 12339 and appellees in No. 12339A.

BROWNING, PRESIDENT:

Plaintiffs, Sam Foglesong, George Nease, Jr., and Roy Donald Neely, a partnership, doing business as Sam Foglesong Funeral Home, instituted this action in the Circuit Court of Wyoming County praying for an injunction restraining the defendants from using the name "Foglesong Funeral Home, Inc." or any variant thereof which is so similar to that of plaintiffs' trade name as to be likely to confuse and mislead the public. Defendants answered separately, the answer of Robertson & Foglesong, Inc., containing a cross-claim praying that plaintiffs be enjoined from further use of the name "Sam Foglesong Funeral Home". The individual defendants, James L. McDougal, H. E. Lilly, D. C. Farley, Jr., and D. T. Cook were dismissed, on their motion, as parties defendant.

It appears from the evidence that the defendant, Robertson & Foglesong, Inc., was incorporated in the year 1928 and since that time has been engaged in the funeral home business in Mullens and Pineville, West Virginia. Sam Foglesong, one of the plaintiffs herein, became associated in the business in 1940 and became sole owner in 1946.

In 1958 he sold a majority of his stock to H. E. Lilly and others but remained in the business as president and general manager. In the year 1961 a disagreement between him and Lilly resulted in his leaving the business as of May 31, 1961. From the time he became associated in the business or, at least since he became sole owner in 1946, the company was listed in the telephone directory as "Robertson & Foglesong, Inc.," and "Foglesong Funeral Home" in Mullens and the other office in Pineville had the listings "Robertson & Foglesong, Inc.," and "Sam Foglesong, Undertaker". In the classified section of the directory all of the above listings appeared. The single word "Foglesong" was contained on a metal plate appearing on all hearses and other automotive equipment of Robertson & Foglesong, Inc.

Upon leaving Robertson & Foglesong, Inc., in May, 1961, Sam entered into business with two other former employees as a partnership under the name "Sam Foglesong Funeral Home" and began operating on June 9, 1961, in the former location of Robertson & Foglesong, Inc., the latter company, some two years earlier, having moved from that location to a new and modern facility on the outskirts of Mullens. Sam Foglesong, at this time, had his residence phone number transferred to his new place of business and obtained another listing for his home. Sam Foglesong Funeral Home and Robertson & Foglesong, Inc., thereupon became competitive in Mullens and during this period the evidence is in conflict as to the confusion resulting in the use of the name Foglesong in the two establishments. James L. McDougal became associated with Robertson & Foglesong, Inc., in the latter part of June, 1961, managing the Pineville branch of the business. In March, 1962, he went to Mullens and subsequently purchased the business from Lilly and began advertising the same as "McDougal's Robertson & Foglesong, Inc." The telephone listings remained the same as they had been since June, 1961, when Mr. Lilly had caused all of the listings except Robertson & Foglesong, Inc., at both its Mullens and Pineville branches to be deleted from the directory. In Sep-

tember of 1962, Mr. McDougal obtained a charter in the name of Foglesong Funeral Home, Inc., and began displaying this name on various automotive equipment of Robertson & Foglesong, Inc. He also caused this corporation to be listed in the telephone directory as Foglesong Funeral Home, Inc., with a different number from that of Robertson & Foglesong, Inc., although both corporations were located in and used the same facilities. The evidence as to the confusion alleged by both parties is conflicting and would appear to be primarily the result of errors on the part of the postal authorities in that mail addressed to Foglesong Funeral Home and giving the street address of the Sam Foglesong Funeral Home would inadvertantly be placed in the Robertson & Foglesong, Inc., box. There was also some testimony that telephone calls for one of the parties would be received by the other party, but these appear in the main to have been from people requesting Sam or one of his partners by name. There is also some evidence that at least one check was issued to Sam Foglesong Funeral Home when it should have been payable to Robertson & Foglesong, Inc. This check was endorsed in behalf of the Sam Foglesong Funeral Home and forwarded to the correct party.

At the conclusion of the evidence the trial court awarded injunctions restraining the defendants from the continued operation under the name of "Foglesong Funeral Home, Inc.," excepting the use by the defendants of the nameplate "Foglesong" on their automotive equipment, and also enjoined plaintiffs from doing business as "Sam Foglesong Funeral Home" or "Foglesong Funeral Home" or "Foglesong". The injunction against the defendants included a restraint against James L. McDougal, who, as heretofore mentioned, had been previously dismissed as a party defendant. Both plaintiffs and defendants sought appeals from this order, which were granted by this Court on June 1, 1964, and July 13, 1964, respectively.

It would appear from the citation of authorities and briefs of the parties and from our research that the questions raised in this case are of first impression in this juris-

diction. However, there is abundant authority elsewhere and counsel seem to have exhausted the cases in their excellent briefs. The general rule seems well settled and provides that every person has a right to use his own name in his own business in the absence of fraud, contract, estoppel or resort to "any artifice, or any act" calculated to mislead the public as to the identity of business establishments or to produce injury to another beyond that which naturally results from similarity of names. Of necessity counsel for the parties rely upon many of the same decisions in other jurisdictions. The decision of the trial court in enjoining Foglesong Funeral Home, Inc., from thereafter using that name we affirm unanimously without difficulty. It is obvious that the defendants secured a charter in September of 1962 for that corporation for the express purpose of unfairly competing with the funeral establishment of the three plaintiffs. While it is true that from the year 1928 the old firm of Robertson & Foglesong, Inc., had sometimes been known by and perhaps advertised under the name "Foglesong Funeral Home", upon all the facts and the circumstances in this case we are in agreement with the trial chancellor that he properly enjoined the further use of that name and in that regard he is affirmed.

It was with more difficulty that this Court arrived at its decision to affirm the trial court also upon its holding that the three plaintiffs be forbidden to operate their business under the name of "Sam Foglesong Funeral Home". The rule as stated in 87 C.J.S., Trade-Marks, etc., § 107, is that ". . . everyone has a right to use his own name in his own business, either alone or in connection with others, as in a partnership or a corporation" in the absence of fraud, contract or estoppel, but such right is subject to the general rules with respect to unfair competition and a personal name "must be used truthfully and in good faith" or its use will be enjoined. In the case of *Meneely* v. *Meneely,* 62 N. Y. 427, 20 Am. Rep. 489, the court held: "Every man has the absolute right to use his own name in his own business, even though he may thereby interfere with and injure the business of another bearing the same name;

provided. he does not resort to any artifice, or do any act calculated to mislead the public as to the identity of the establishments, and to produce injury to the other beyond that which results from similarity of the names." See also, *Donnell* v. *Herring-Hall-Marvin Safe Co.*, 208 U. S. 267, 28 S. Ct. 288, 52 L. Ed. 481.

The facts in this case are very similar to those in *McFadden Publications, Inc.* v. *B. L. McFadden, Inc.*, 231 N. Y. Supp. 185. In that case the name of the defendant was the same as that used by a long established publishing business and the defendant organized a new competing corporation giving it his personal name and the name was emphasized on the covers of the magazines, the offices of the new company were established in close proximity to those of the old company, and the court found that confusion would of necessity result with reference to their subscribers and restrained the new company from using the name under which it had become incorporated. To the same effect are: *N. J. Henry Mfg. Co.* v. *Henry Screen Co.*, 197 N. Y. Supp. 444; *J. & P. Coates Limited* v. *John Coates Thread Co.*, 135 Fed. 177; *Paul Westphal* v. *Westphal's World's Best Corp.*, 154 N. E. 638; *M. M. Newcomer Co.* v. *Newcomer's New Store* (Tenn.), 217 S. W. 882; *Dunlop Pneumatic Tyre Co.* v. *Dunlop-Truffault Cycle & Tube Mfg. Co.*, 12 Times L. R. 434. In *Backus Oil Co.* v. *Backus Oil & Grease Co.*, 80 Dec. Reprint 93, the court enjoined the use of a name of a new company on the ground that confusion and injury would result to the old company if the defendant were permitted to use such name and, in the opinion, said: "I do not think that the fact that it is his own name that he has given to the corporation helps the matter any. He may use his own name in his *own* business, but he has no right to give it to a corporation to use to the injury of another." (Italics supplied.)

Under the old common law practice and procedure prior to the adoption and promulgation by this Court of Rules of Civil Procedure for Trial Courts and the abolishment of the difference between actions of law and chancery, this would fall in the latter category. The issues in such a suit

are still resolved by a trial chancellor sitting in lieu of a jury. We give to his decision upon the facts the same weight that would be given to the verdict of a jury in a case wherein a jury would be required to pass upon the facts. *General Electric Credit Corp.* v. *Fields,* 148 W. Va. 176, 133 S. E. 2d 780, and cases cited therein. Upon these facts and the reasonable inferences that the trial chancellor could have drawn therefrom, we affirm his decision giving relief to the defendants in their cross-complaint: Robertson & Foglesong, Inc., was established in 1928 and had apparently continued in business in Wyoming County with establishments in the two leading towns of Wyoming County, Mullens and Pineville, until June 9, 1961; the three plaintiffs were employed by that establishment until May 31, 1961, and on June 9, 1961, started the competing funeral business as heretofore noted; Sam Foglesong was first associated with the old firm in 1940 and became the sole owner in 1946; he operated the business from the last mentioned date to 1958 when he sold a majority of his stock to H. E. Lilly but remained in the business as president and general manager until 1961; the record shows that during the period between 1958 and 1961 this establishment operated at a loss apparently for the only period of time since its establishment; during all of the time that Sam Foglesong was associated with the old firm his home telephone number was published and used in advertisements by the old firm and upon the beginning of the new firm that number was given to the latter and he secured a different number for his home; although Sam Foglesong, George Nease, Jr., and Roy Donald Neely established the new firm as a partnership it was given the name "Sam Foglesong Funeral Home"; and, the partnership established its business in the building formerly used by Robertson & Foglesong, Inc., and on which the name "Foglesong" still appears.

To repeat, upon these facts and the reasonable inferences that could be drawn from them, we will not disturb the ruling of the trial court and its order will be affirmed in its entirety.

*Affirmed.*