FIRST BANK AND TRUST COMPANY OF PALATINE, Plaintiff-Appellee, *v.* DONALD POST *et al.*, Defendants-Appellants.

(No. 56011;

First District (3rd Division)—February 8, 1973.

Kenneth J. Brundage, of Chicago, for appellants.

George E. Downs, of Palatine, for appellee.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This is an appeal from a judgment of the circuit court finding the defendants personally obligated to the plaintiff on a promissory note signed by them. The trial judge entered judgment against the defendants in the amount of $8,483.44, which sum represented the unpaid balance due on the note plus interest and attorney's fees. Two of the original three defendants pursue this appeal and argue that the judgment of the trial court should be reversed because they signed the note in a representative capacity as officers of a corporation, and not personally. The issues presented are: (1) whether, as between the original parties to the instrument, the defendants are personally liable upon a note intended by both

parties to be a corporate obligation which, due to an oversight, bears the signatures of the defendants but does not indicate either the corporation represented or the relationship of the signors to the corporation, and (2) whether the defendants were discharged from their obligation as guarantors of indebtedness.

We reverse.

In June, 1967, the defendants were the officers of a corporation known as Palatine Welding Sales and Manufacturing, Inc. In order to enable the corporation to purchase a lathe needed in the conduct of the business, the defendants negotiated a loan with the plaintiff bank in the amount of $10,000 plus interest, producing a total indebtedness of $11,500. On June 12, 1967, the defendants signed two documents, a chattel mortgage security agreement and a chattel mortgage note, in order to complete the loan transaction. The chattel mortgage security agreement granted to the plaintiff a security interest in the lathe as collateral for the loan. On the security agreement the words "Palatine Welding Sales and Manufacturing, Inc." were hand-written once at the top left of the document and again on the first line provided for signatures, with the defendants' signatures beneath. All written notations on the face of the note, except for the defendants' signatures, were made by the loan officer of the bank, one Delvin Johnston. The chattel mortgage note does not bear the name of the corporation. In the area provided for signatures the names of the three defendants appear with no designation of either the person represented or their representative capacity. On the back of the note there is also what appears to be a one-sentence, typewritten personal endorsement guaranteeing the obligation that appears on the face of the note, below which the signatures of the defendants again appear. Mr. Johnston also had a U.C.C. filing form signed by one of the defendants, Donald Post, at the same time. The filing form was never registered by the plaintiff as is provided by Article 9 of the Uniform Commercial Code.

Sometime thereafter the corporation was placed in bankruptcy, and the lathe was sold by the Receiver in Bankruptcy. During this period the chattel note was held by the plaintiff and was never negotiated to a third person. In April, 1969, the plaintiff confessed judgment against the defendants for the unpaid balance of the note. Subsequently the confession judgment was vacated, and in January, 1971, the matter proceeded to trial at which time the following pertinent evidence was adduced.

Delvin Johnston testified that he was the bank officer who negotiated the loan to the defendants. He stated that he filled in the appropirate blanks on the security agreement and note prior to their signing by the defendants. Johnston further testified that it was his intention that the note be executed by the defendants in their capacity as officers of the

Palatine Welding Sales and Manufacturing Corporation, and that due to some oversight he neglected to place the name of the corporation on the note, as he had done in the security agreement. It was his understanding at the time the loan was made that it was a loan to the corporation. Johnston also testified that he explained to the defendants that they were signing for the corporation on the face of the note. The purpose of the typed endorsement on the back of the note was to have the defendants, in their personal capacity, guarantee the corporate indebtedness.

The three defendants testified at trial that it was also their understanding that the loan was to the corporation and not to bind them personally, except as guarantors of the indebtedness should the corporation fail to repay the obligation.

The trial judge rendered a verdict for the plaintiff, but failed to state whether the defendants' liability arose from their signatures on the face of the note or their signatures as guarantors on the reverse of the note.

In this appeal the defendants argue that they cannot be held personally liable on the note in a suit between the original parties where it was the intention of both the makers and the payee that the signatures on the face of the note were to create a corporate obligation. The defendants further argue that any liability arising from the guarantee on the back of the note was discharged because the plaintiff, by failing to file a financing statement with the Secretary of State (Ill. Rev. Stat. 1969, ch. 26, par. 9—401(1)(c)), unjustifiably impaired the collateral for the loan within the meaning of Ill. Rev. Stat. 1969, ch. 26, par. 3—606.

In its argument to support the judgment awarded below, the plaintiff relies heavily upon Ill. Rev. Stat. 1969, ch. 26, par. 3—403—(2)(a), which states:

"(2) An authorized representative who signs his own name to an instrument (a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity."

The plaintiff contends that, notwithstanding the admitted understanding and intention of the parties that the face of the note was to be a corporate obligation, this court should affirm the judgment of the trial court by strictly construing this section of the Uniform Commercial Code. We do not agree.

First, it is important to point out that all the parties in this suit are the original parties to the note and all testified that it was their intention to create a corporate obligation.

■■ Second, the note and security agreement were executed contemporaneously and as part of the same transaction and concerned the same subject matter and, therefore, should be construed together.

(*Fronek v. Wroblewski* (1930), 255 Ill.App. 529.) The security agreement clearly shows that the corporation, Palatine Welding Sales and Manufacturing, Inc., was a party to this loan transaction. The note appears to be signed by the defendants personally, but the reverse side bears a guarantee wherein the same persons personally guarantee their own signatures, a seemingly senseless redundancy. When construed together the form of these instruments fairly indicates to the eye of common sense that the makers intended to sign the face of the note as officers of the corporation. (*Smith v. Reisch* (1946), 329 Ill.App. 45, 67 N.E.2d 304; *New Georgia Nat. Bank of Albany v. J. & G. Lippmann* (1928), 249 N.Y. 307, 164 N.E. 108.) Further, the form of these two instruments as completed certainly present an ambiguous appearance. The ambiguity apparent from the signatures on the note and the security agreement presented a question of fact which justified the introduction of parol evidence to show the intention of the parties and the capacity in which they signed the note, and such intention is controlling in determining their liability. (*Uptown Federal Savings & Loan Assn. v. Collins* (1969), 105 Ill.App.2d 459, 245 N.E.2d 521.) The cases cited by the plaintiff on this point are clearly distinguishable. In *Gelman v. Wendrick* (1944), 321 Ill.App. 639, 53 N.E.2d 479; *Chandler v. Chandler* (1945), 326 Ill.App. 670, 63 N.E.2. 272; and *Jones v. Albee* (1873), 70 Ill. 34, the attempted introduction of parol evidence was for the purpose of showing some verbal agreement between the parties that limited the makers' liability, not to clarify an instrument obviously ambiguous on its face.

■■ Finally, we find that the strict application of Ill. Rev. Stat. 1969, ch. 26, par. 3—403—(2)(a), to the facts in this case would cause an injustice. Were we to hold otherwise we would be enforcing a result that would be contrary to the intention of all parties. The uncontradicted testimony of all parties to this instrument indicates that the note was understood and intended to be a corporate obligation and that due only to some oversight on the part of the plaintiff the form of the instrument signed did not reflect that understanding. The Uniform Commercial Code was enacted to provide a general uniformity in commercial transactions conducted in this state and was never intended to be used by courts to create a result that is contrary to the clearly understood intentions of the original parties. (Ill. Rev. Stat. 1969, ch. 26, par. 1—102.) Therefore, we find that the face of the chattel mortgage note represents a corporate obligation that does not personally obligate the defendants.

We now turn to the issue of whether the defendants are personally liable on their personal guarantee appearing on the back of the chattel mortgage note. The plaintiff argues that this personal guarantee establishes the liability of the defendants for the unpaid balance of the note,

whether or not the court determines that the face of the note is a personal obligation. We do not agree.

Ill. Rev. Stat. 1969, ch. 26, par. 3—606(1)(b) states:

"(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder (b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

■■ By not filing a financing statement as is required by Ill. Rev. Stat. 1969, ch. 26, par. 9—302, the plaintiff held an unperfected security interest in the collateral which "is subordinate to the rights of a person who becomes a lien creditor without knowledge of the security interests and before it is perfected." (Ill. Rev. Stat. 1969, ch. 26, par. 9—301(1)(b).) A "lien creditor" is defined by the Code to include a Trustee in Bankruptcy from the date of the filing of the petition. Ill. Rev. Stat. 1969, ch. 26, par. 9—301(3).

■■ By not filing the financing statement in accordance with Article 9 of the Code, the plaintiff's security interest was subordinate to that of the Trustee in Bankruptcy. This subordinate position produced an unjustifiable impairment of the collateral in that the plaintiff was prevented from disposing of the collateral and crediting the amount received to the indebtedness owed to it by the corporation. The defendants, as guarantors of the corporate indebtedness, would then have only been responsible for any remaining indebtedness, had there been any, instead of the entire unpaid balance, as is the plaintiff's present theory. See, *Kopf v. Yordy* (1917), 208 Ill.App. 580; and Uniform Commercial Code, Comment 5 to Ill. Rev. Stat. 1969, ch. 26, par. 3—606.

■■ The plaintiff argues that certain phrases contained in the note signed by defendants waived their right to the defense of discharge under Paragraph 3—606(1)(b). These sections of the note referred to by the plaintiff express the signors consent to the holders granting of extensions of time of payment or performance and the signors waiver of any presentment, demand, protest or notice of dishonor. Giving these clauses even the most liberal interpretation, they obviously do not purport to waive or give consent to the unjustifiable impairment of collateral by the plaintiff. We find that the defendants have not waived their defense under Paragraph 3—606(1)(b) and, therefore, they are discharged from the obligation as personal guarantors of the indebtedness.

For the above reasons we reverse the judgment of the circuit court of Cook County.

Judgment reversed.

DEMPSEY, P. J., and McNAMARA, J., concur.