PEOPLES BANK OF POINT PLEASANT

*v.*

PIED PIPER RETREAT, INC.,

*a corporation, et al.*

(No. 13387)

Decided July 23, 1974.

Rehearing Denied November 15, 1974.

*Stone, Bowles, Kauffelt & McDavid, P. Michael Pleska* for appellants.

*Dean & Kingery, Don C. Kingery* for appellee.

SPROUSE, JUSTICE:

This is an appeal from the judgment of the Circuit Court of Mason County where the plaintiff, Peoples

Bank of Point Pleasant, was awarded $5,073.51 against Pied Piper Retreat, Inc., Frank R. Curatolo, and P. A. Sayre, the defendants, in an action on a promissory note. The action was tried by the trial court sitting in lieu of a jury.

The appellants, Curatolo and Sayre, do not dispute that they signed the note in question, but contend they signed it as accommodation parties. They further contend that they are released from any liability on the note under the provision of the Uniform Commercial Code (Code, 1931, 46-3-606, as amended), which releases certain parties to a negotiable instrument from liability, when the holder of the instrument has impaired collateral given as security. The appellee bank admits that it did not perfect the lien given in connection with the note, thereby losing the collateral securing the note, but contends the appellants are principal debtors on the note and, therefore, the defense provided by Section 606 is not available to them. The bank also contends that even if such a defense would be otherwise available, it should be denied the defendant Sayre, because as a director of the bank, he breached his fiduciary duty to the bank in not advising them of a previously existing lien held by the Small Business Administration.

Curatolo and Sayre, the appellants, were sole stockholders of Pied Piper Retreat, Inc., a corporation which purchased a motel, financing it by a purchase money loan from the Small Business Administration. The Small Business Administration retained a lien upon all tangible property of the resort, including "after acquired" personal property.

Subsequently in April, 1968, the defendants negotiated a loan with the plaintiff bank for the purchase of a number of television sets for the motel, executing a note in the amount of $20,060. The proceeds of the loan were paid by the bank and all of the principal and interest except $5,073.51 had been repaid at the time suit was

brought. The note, stating "* * * we promise to pay * * *", was signed "Pied Piper Retreat, Inc., by Frank R. Curatolo, Pres.", and was signed on the reverse side by Frank R. Curatolo and P. A. Sayre.

Curatolo and Sayre sold their stock in Pied Piper in 1970, but the Small Business Administration later took possession of the property under the 1968 deed of trust. Acting under its "after acquired" property lien in the 1968 deed of trust, it sold the television sets and applied the proceeds of the sale to its loan balance. The claim of the plaintiff bank for priority, resulting from its purchase money lien upon the television sets and other business equipment, was denied because it had not perfected its lien by properly filing the financing statement with the office of the Secretary of State.

There was a sharp conflict of evidence concerning the capacity in which the defendants signed the note. Mr. Curatolo began negotiations for the loan with Emil E. Martin, executive vice president and cashier of the plaintiff bank.

Martin testified that the loan committee recommended to the board of directors that the loan be approved, provided it be signed by both Mr. Sayre and Mr. Curatolo personally. The minutes of the board meeting approving the loan contained a notation indicating that the note must be signed by both parties and they would be personally responsible.

Martin and Jack Fruth, chairman of the executive committee, testified that the personal signatures of the appellants were required because the corporation had not been in operation for any extent of time; the bank was not in a position of marketing television sets; and the bank could not look to the corporation for money. Fruth stated in his testimony that the loan was not made upon the security of the signature of Pied Piper Retreat, but upon the security of the collateral involved and the signatures of the two individuals. Fruth testi-

fied as follows concerning his communication of this to the defendants:

> "Q. Was that loan made on the security of Pied Piper Retreat?
>
> "A. No, sir.
>
> "Q. Did you communicate that thought to Mr. Sayre?
>
> "A. Yes, sir.
>
> "Q. What did you base your security on for that loan?
>
> "A. It was based on the collateral involved and the signatures of the two individuals."

Martin and Fruth both testified they were not advised, either by Sayre or Curatolo, as to the existence of any "after acquired property" clause in the Small Business Administration deed of trust or security agreement.

According to the testimony of Curatolo, he signed the note with the understanding that it would be filled in when the billing invoices were received by the bank. He received a receipt which he testified was obtained because the instruments were signed in blank. He stated that he signed the note as president of the corporation, and was called in at a later time to sign as an endorser.

Sayre testified that he was in Hawaii when the loan was negotiated, returning to Mason County after the loan was approved. He testified he signed as an endorser and that he did not know if it was explained to him why his signature was required. He stated that no one at the bank ever inquired as to any negotiations with the Small Business Administration or as to any other liens against the corporation. He testified that he told Fruth shortly after the motel was acquired, that it had been purchased from the Small Business Administration and that they would have a first mortgage on it. He did not, however, tell him about the "after acquired" property clause.

On rebuttal, Mario Liberatore, assistant cashier of the plaintiff bank, testified that he attended a meeting between the appellants, Mr. Martin and others. At this time, he testified that the note, a security agreement, and financing statement were executed. He stated that they were completed at the time of execution. This testimony was substantiated on rebuttal by Mr. Martin.

At the conclusion of all of the evidence, the court made oral findings of fact and conclusions of law as follows:

> "(A) That the defendant, P. A. Sayre, breached a fiduciary duty then owing by him to the plaintiff when he failed, prior to the consummation of the loan, to inform the plaintiff bank of the existence of the prior Small Business Administration lien.

> "(B) That both defendants, Frank R. Curatolo and P. A. Sayre were primary parties in their respective capacities on the note in question and that neither of them was an accommodation party as claimed in their defenses."

The issues raised on appeal are whether: (1) The case should be remanded to the trial court because that court did not make written findings of fact and conclusions of law as required by Rule 52 of the West Virginia Rules of Civil Procedure; (2) the defendant, Sayre, breached a fiduciary duty to the bank in not affirmatively advising them of the existence of the prior Small Business Administration lien; (3) the bank's failure to record a financing statement in the office of the Secretary of State constitutes an unreasonable impairment of collateral, and if so, were Curatolo and Sayre accommodation parties so that they would be released from liability by virtue of such unreasonable impairment.

After the trial court made its findings of fact and conclusions of law, announcing them orally in court, the court reporter failed to transcribe them. They are well documented, however, in the record by motion of the parties. While we do not approve of this practice as a

general rule, we do not conceive Rule 52 to impose merely formal requirements. Since the court's findings are sufficiently documented in the record to allow a complete review, the form of the findings, while constituting error, is not sufficient error for a reversal and remand. *See, National Grange Mutual Insurance Company v. Wyoming County Insurance Agency, Inc.*, W. Va., 195 S.E.2d 151 (1973); *Commonwealth Tire Company v. Tri-State Tire Company*, W. Va. 193 S.E.2d 544.

A director or an officer must make the fullest disclosure and deal fairly with the bank in his relations therewith. 1 Michie, *Banks and Banking*, Chapter 3, Section 71, page 291. A director is required, because of his fiduciary character, to act with utmost good faith and fairness. 10 Am. Jur. 2d *Banks* Section 180.

In *Citizens National Bank of Parkersburg v. Blizzard*, 80 W. Va. 511, 93 S.E. 338, a director failed to disclose the payment of overdrafts by the bank president on checks issued by a corporation in which both the director and president were involved. The court held that the director should have notified the other directors and given them an opportunity to approve or disapprove the president's acts. *See, Bank v. Lowther-Kaufman Oil & Coal Co.*, 66 W. Va. 505, 66 S.E. 713, where knowledge of the director, which accrued to his interest and was not disclosed, could not be imputed to the bank so as to bind the bank adversely.

A review of the evidence does not reveal any use of his position by Sayre to secure favorable action on the loan. The contrary is probably indicated. Limited strictly to the circumstances of this case, we don't feel that Sayre breached a fiduciary duty by not affirmatively advising the bank of the prior Small Business Administration loan. His good faith acts in applying for and receiving a loan are not of the same character as was discussed in the authorities cited above.

The most serious issued presented on this appeal is whether the appellants should be excused from paying

the balance due on the note because the bank "impaired the collateral" by not perfecting its lien on the television sets.

Code, 1931, 46-9-401, as amended, provides:

"(1) The proper place to file in order to perfect a security interest is * * *:

\* \* \*

"(c) * * * in the office of the secretary of state and in addition, if the debtor has a place of business in only one county of this State, also in the office of the county clerk of such county, * * *."

There is no doubt that the bank could have perfected its lien on the television sets so that it would have priority over the Small Business Administration lien, if the bank had filed the security instruments in accordance with the provisions of Code, 1931, 46-9-312(4), as amended. That provision provides:

"A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten days thereafter."

There is likewise no doubt that the failure of the bank to file the financing statement at the office of the secretary of state resulted in its losing its lien's priority. That raises the question whether such loss, caused by the bank's neglect, releases Curatolo and Sayre from obligation on the note.

Code, 1931, 46-3-606, as amended, provides:

"(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder

\* \* \*

"(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or

any person against whom he has a right of recourse."

In considering whether the defendants signed the note in such manner as to avail themselves of this defense, we must first determine whether the bank's failure to perfect the lien is an action which unjustifiably impairs any collateral. The few courts considering the question are not in agreement as to the applicability of the "impairment of collateral" defense to a transaction such as is involved here. The official comment to Code, 46-3-606, in discussing what action constitutes "unjustifiable" impairment, refers to Code, 46-2-207. That section relates to "Rights and duties when collateral is in secured party's possession," and governs direct impairment of the value of collateral, not impairment of the security rights in the collateral. A number of courts have interpreted this provision of the Uniform Commercial Code in this manner. *Nation Wide, Inc. v. Scullin*, 256 F. Supp. 929 (D.C. N.J.); *Rushton v. U. M. & M. Credit Corporation*, 245 Ark. 703, 434 S.W.2d 81; 2 Hart & Willier, *Commercial Paper Under U.C.C.*, Section 12.21[2], page 12-88. Some courts have held, however, that such impairment of the security rights in collateral as was involved here is an unjustifiable impairment of collateral as contemplated by Code, 46-3-606. *First Bank and Trust Company v. Post*, 10 Ill. App. 3d 127, 293 N.E.2d 907; *White v. Household Finance Corporation*, 302 N.E.2d 828 (Ind.); *Shaffer v. Davidson*, 445 P.2d 13 (Wyo.). The better logic and the purposes of the Uniform Commercial Code would seem better served by holding that failure to so perfect a lien is an unjustifiable impairment as contemplated by Code, 46-3-606.

The appellant concedes that this defense of unjustifiable impairment of collateral is available only to secondary or accommodation parties. This is undoubtedly the rule—the defense is available to both secondary parties and accommodation parties, whether the latter are secondary accommodation parties such as accommodation endorsers, or primary accommodation parties such as accommodation makers. The defense is not available to

principal debtors, *i.e.*, makers. *See*, the official comment to Code, 46-3-606, where it is indicated that this is a suretyship defense available to a party who has recourse against another party to the instrument. *See also*, I Hawkland, *A Transactional Guide to the Uniform Commercial Code*, Section 2.1705, page 551, Section 2.2101, page 563; *The Oregon Bank v. Baardson*, 256 Ore. 454, 473 P.2d 1015.

The issue evolves, therefore, into the determination of the capacity of the defendants Curatolo and Sayre, in signing the notes. If they signed as accommodation parties, the defense is a valid one. If they signed the note as principal debtors, *i.e.*, makers, and not as an accommodation maker or endorser, however, the defense of "impairment of collateral" is not available to them.

An accommodation party is defined in Code, 1931, 46-3-415(1), as amended, as: "* * * [O]ne who signs the instrument in any capacity for the purpose of lending his name to another party to it." Under Code, 1931, 46-3-415(2), as amended, an accommodation party is liable in the capacity in which he has signed. He may, therefore, be an accommodation maker, acceptor or endorser, etc.

In 2 Anderson, *Uniform Commercial Code*, Section 3-415:4, page 1000, the following statement appears: "One who signs an instrument in any capacity for the purpose of lending his name to another party to it is an accommodation party, regardless of whether he received any compensation for so acting or did so gratuitously."

Code, 1931, 46-3-415, as amended, in subsection (4) provides: "An indorsement which shows that it is not in the chain of title is notice of its accommodation character."

It is the general rule that in determining whether a given party is in fact an accommodation party, the intention of the parties is a significant element. 2 Anderson, *Uniform Commercial Code*, Section 3-415:9, page 1002.

In *Parsons v. Harrold*, 46 W. Va. 122, 32 S.E. 1002, the Court stated in the fourth point of the Syllabus as follows:

> "When two persons make a note the *prima facie* presumption is that they are both principals, and the payee may so treat them, unless the note, or the parties, or the circumstances, plainly inform the payee that one is a surety. The surety may so notify the payee, and then the payee must have regard to his rights as such."

However, this Court held in *Cole v. George*, 86 W. Va. 346, 103 S.E. 201, that a person who placed his name on the back of a negotiable instrument without any qualification in writing, agreed to an endorser's contract.

Code, 1931, 46-3-402, as amended, states: "Unless the instrument clearly indicates that a signature is made in some other capacity it is an indorsement."

It is clear, however, from the face of the negotiable instrument here that the appellants intended to sign the note other than as endorsers. The note, containing the language "* * * we promise to pay * * *, while evidencing both a non-corporate and plural promise, bore only the signature of the corporation on the front of the instrument. Where it is clear from the face of a negotiable instrument that the parties signed in a capacity other than as endorsers, but there is a dispute as to which capacity, parol evidence is admissible to show the intention of the parties as to the capacity in which the instrument was signed. *First Bank and Trust Company v. Post, supra.*

Testimony concerning capacity in which the appellants signed the note was so conflicting that a trier of fact could only have resolved it by believing some witnesses and disbelieving others. The trial court apparently chose to believe the evidence for the bank that the loan was made directly to the two individual defendants as principal debtors (makers). This evidence, together with the evidence concerning the structure of the corporation, with active solicitation of the loan from the bank

by the individual defendants, and the position of the defendant, Sayre, certainly comprises evidence which the trial court could have properly considered in arriving at a finding of fact as to the intention of the parties concerning the capacity in which they signed the note.

The factual findings of a trial court sitting in lieu of a jury will not be disturbed on appeal unless they are plainly wrong. This rule is so well settled that it requires no detailed discussion. *Bluefield Supply Company v. Frankel's Appliances, Inc.,* 149 W. Va. 622, 142 S.E.2d 898; *Foglesong v. Foglesong Funeral Home, Inc.,* 149 W. Va. 454, 141 S.E.2d 390; *General Electric Credit Corporation v. Fields,* 148 W. Va. 176, 133 S.E.2d 780; Rule 52(a), West Virginia Rules of Civil Procedure.

We cannot say in reviewing the evidence in this case that the trial court was wrong in finding that Curatolo and Sayre were neither secondary nor accommodation parties.

In view of the above, the judgment of the Circuit Court of Mason County is affirmed.

*Affirmed.*

NEELY, JUSTICE, *dissenting*:

I respectfully dissent from the ruling of the majority of the Court, particularly with regard to the holding of syllabus point 4 which provides that the unreasonable impairment of collateral under *Code*, 1931, 46-3-606 releases only secondary and accommodation parties. With due deference to the learned discussion of the official commentator and precedent to the contrary from foreign jurisdictions, it appears that the statute is clear when it says: "The holder discharges *any party* to the instrument . . . ." (emphasis supplied.) When the statute provides "any party" logic demands that it mean "any party" and its application not be limited to secondary or accommodation parties. Unreasonable impairment of collateral should discharge a maker who is also adversely affected by a holder's impairment of the collateral, as

the maker no longer has available the potential proceeds of a sale of the collateral for the purpose of reducing his out-of-pocket expenses to satisfy the note.

Furthermore, proper public policy dictates this result. In many parts of West Virginia borrowers are not regularly advised by legal counsel and are ignorant of the commercial law and the complex requirements set forth in the Commercial Code for perfecting security interests. Many well-qualified lawyers who do not specialize in commercial law are similarly uninformed. Banks, on the other hand, perform numerous secured transactions every day and have the capability of developing expertise in the requirements for perfecting security interests. It is the responsibility of the bank to perfect its security interest for its own protection, and I would infer from a plain reading of the statute that it was the intent of the Legislature in adopting *Code*, 46-3-606 that the risk of loss by virtue of impairment of collateral be sustained by the party with the greatest expertise and who is responsible for the perfection of the security interest.

Accordingly, I would reverse the case and remand it for a new trial exclusively on the issues of whether the defendant, Sayre, breached the fiduciary duty to the bank and whether the bank's failure to record a financing statement in the office of the Secretary of State constituted an unreasonable impairment of collateral.