**UNITED SIDING SUPPLY, INC., Appellant,**

**v.**

**RESIDENTIAL IMPROVEMENT SERVICES, INC. and David P. Lindsey, Respondents.**

**No. WD 45801.**

Missouri Court of Appeals, Western District.

March 9, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 1993.

Application to Transfer Denied June 29, 1993.

J. Michael Joy, Lee's Summit, for appellant.

William M. Quitmeier, Quitmeier & Ralls, P.C., Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and SHANGLER and SPINDEN, JJ.

BRECKENRIDGE, Presiding Judge.

United Siding Supply (United Siding) appeals from the trial court's judgment that David P. Lindsey, president of Residential Improvement Services, Inc. (R.I.S.), is not personally liable for the debt R.I.S. owes United Siding. On appeal, United Siding argues that the trial court erred in finding that the agreement executed by Lindsey is not a personal guaranty because, as a mat-

ter of law, the agreement subjected Lindsey to personal liability on the account balance R.I.S. owes United Siding.

The judgment is affirmed.

R.I.S. was involved in the retail sale of residential siding. United Siding, an Oklahoma corporation, was a siding supplier to R.I.S. On September 12, 1984, Eugene Harrison, president of United Siding, met with Lindsey. At Harrison's request, Lindsey executed two documents, one on each side of the same sheet of paper. One side of the paper was labeled "Credit Application" which Lindsey completed and signed "David P. Lindsey, Pres." The other side of the paper was titled "Personal Guarantee and Suretyship Agreement" which Lindsey signed "David P. Lindsey, Pres. R.I.S. Inc." Lindsey testified that he told Harrison that he would not sign the guaranty as a personal guaranty but only on behalf of R.I.S. Lindsey also testified that Harrison agreed to this and accepted the guaranty as it was signed. The guaranty agreement states that it shall be construed under the laws of Oklahoma.

In 1987, United Siding filed suit against R.I.S. and Lindsey. At the time of trial, R.I.S. owed United Siding $54,275.26, including interest. The trial court entered judgment for United Siding and against R.I.S. in that amount but refused to hold Lindsey personally liable for the debt.

■ United Siding asserts one point on appeal in which it argues that the trial court erred in ruling that the Personal Guarantee and Suretyship Agreement executed by David P. Lindsey was not a personal guaranty because the agreement is, as a matter of law, the personal guaranty of David P. Lindsey and thus subjects him to liability for the account balance due United Siding from R.I.S. In a court-tried action, the trial court's decision will be affirmed on appeal unless there is no substantial evidence to support the decision, it is against the weight of the evidence or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). On appeal of a court-tried case, the court will accept as true the evidence, and inferences that can be made

from it, favorable to the trial court's judgment and disregard all contrary evidence. *T.B.G. v. C.A.G.*, 772 S.W.2d 653, 654 (Mo. banc 1989).

■ Although the agreement was executed in Missouri, it specifies that it is to be construed according to Oklahoma law. The parties' choice of Oklahoma law is valid because parties to a contract may agree, in good faith, that the law of a certain state is to govern their agreement. *American Institute of Marketing Sys., Inc. v. Brooks*, 469 S.W.2d 932, 935 (Mo.App.1971); *Yeats v. Dodson*, 127 S.W.2d 652, 656 (Mo.1939).

■ Oklahoma law is undeveloped regarding whether the form of signature can create ambiguity concerning the capacity in which the signator acts in executing a guaranty. United Siding bases its allegations of error on a slip opinion from the United States Court of Appeals, Tenth Circuit, which applies Oklahoma law. The record reflects that counsel for United Siding indicated that prior to this slip opinion, "there was no Oklahoma case law to present" in support of United Siding's position. The first page of the slip opinion states that, "This order and judgment has no precedential value." As a result, United Siding's arguments regarding the Tenth Circuit slip opinion are without merit and the court will not address them.

■ Under Oklahoma law, a guaranty is defined as "a promise to answer for the debt, default or miscarriage of another person." *Lum v. Lee Way Motor Freight, Inc.*, 757 P.2d 810, 814 (Okla.1987). Because the guarantor's obligation is contractual, a guaranty is generally construed under the rules of contract construction. *INA Life Ins. Co. v. Brandywine Associates*, 800 P.2d 1073, 1076 (Okla.Ct.App.1990). The meaning of the guaranty is controlled by the intent of the parties. *Lum*, 757 P.2d at 815. If the language of the agreement is clear and explicit then its purpose and meaning must be ascertained from the document without considering parol evidence. *Rucker v. Republic Supply Company*, 415 P.2d 951, 953 (Okla.1966). If the guaranty is ambig-

uous, the court must place itself in the parties' position at the time the contract was made and consider the surrounding circumstances and purposes of the transaction, as well as the document. *Lum,* 757 P.2d at 815. Whether the guaranty is ambiguous is a question of law for the court. *Id.*

■ United Siding asserts that the terms and conditions of the guaranty are consistent and unambiguous. The trial court found the guaranty to be ambiguous and heard testimony regarding the parties' intentions and the circumstances surrounding the signing of the document. The trial court found ambiguity because the placement of the guaranty on the back of the credit application could be interpreted to mean that signing the back of the credit application obligated the corporation applying for credit to pay for anything purchased on credit, and because Lindsey signed both the guaranty and the credit application with a corporate signature. United Siding argues that the guaranty contains language clearly indicating that it is Lindsey's personal guaranty and that the principal debtor and the guarantor are separate entities.

■ Lindsey argues that the signature, when combined with the guaranty's failure to identify the debtor, renders the guaranty ambiguous. Lindsey also argues that Oklahoma has adopted the Uniform Commercial Code and that its provisions control in this case. Although the Oklahoma Supreme Court held in *Harris v. Milam,* 389 P.2d 638, 641 (Okla.1964), that a signature can be the source of ambiguity in a negotiable instrument, *Harris* is applicable only by analogy to the case at hand because a guaranty is not a negotiable instrument. A negotiable instrument must be signed by the maker or drawer; contain an unconditional promise or order to pay a sum certain on demand or at a definite time; and be payable to order or bearer. *Shepherd Mall St. Bank v. Johnson,* 603 P.2d 1115, 1117 (Okla.1979). A guaranty does not fit this definition because it lacks a promise to pay a sum certain, is not payable on demand or at a definite time,

and is not payable to order or bearer. *Id.* As a result, Lindsey's argument that Article 3 of the Uniform Commercial Code controls in the case at hand is without merit. The *Harris* court recognized that when "anything appears on the face of the instrument which suggests doubt or ambiguity as to the party bound, or the character in which the persons who signed the instrument acted, parol testimony is admissible to show the true intent as between the original parties." *Harris,* 389 P.2d at 639. The parties have not supplied the court with any Oklahoma authority, nor has the court found any on its own, holding such in the context of a guaranty.

■ Because Oklahoma law is undeveloped on this issue, the court examines the law of other jurisdictions for guidance. Other jurisdictions are divided on the issue. The inconsistency among jurisdictions can be somewhat reconciled once it is observed that generally the jurisdictions do not rely upon a single factor such as the signature or language of the guaranty as determinative, but rather consider the document as a whole to ascertain the existence of ambiguity. Gary D. Spivey, Annotation, *Admissibility of Parol Evidence to Show Whether Guaranty of Corporation's Obligation was Signed in Officers Representative or Individual Capacity,* 70 A.L.R.3d 1276, 1280 (1976). Inconsistent results seem related to factual differences because the facts are of utmost importance when interpreting or construing guaranty contracts. 38 Am.Jur.2d *Guaranty* § 70 (1968).

Among the cases finding that a signature can be considered in determining ambiguity is *First Bank and Trust Company, Palatine v. Post,* 10 Ill.App.3d 127, 293 N.E.2d 907 (1973), which involved a security agreement and a note, with a personal guaranty on the back of the note. Three officers of the corporation signed both the note and the guaranty without designating their representative capacity. The security agreement was signed with the corporate designations. The issue in the case was whether the officers were personally liable on the note. The court found that the signatures when combined with the form of

the instruments were ambiguous, therefore, justifying the introduction of parol evidence. *Id.* 293 N.E.2d at 910. Courts in other jurisdictions have ruled similarly. *See Volume Tire Co. v. O'Conner,* 190 Ga.App. 242, 378 S.E.2d 415 (Ga.Ct.App. 1989); *Puckett v. Codisco, Inc.,* 440 So.2d 596 (Fla.Dist.Ct.App.1983); *L & H Enterprises v. Allied Bldg.,* 88 Md.App. 642, 596 A.2d 672 (1991). In addition, at least two states have explicitly adopted the rule that the signature alone may render a guaranty ambiguous and provide the basis for admitting parol evidence. *Puget Sound National Bank v. Selivanoff,* 9 Wash.App. 676, 514 P.2d 175 (1973); *The Bank of Miami v. Armenteros,* 382 So.2d 1336 (Fla.Dist.Ct. App.1980).

Missouri case law also demonstrates the importance of the facts in cases involving the form of a signature on a guaranty. The general rule in Missouri was established in *Wired Music, Inc. v. Great River Steamboat Co.,* 554 S.W.2d 466 (Mo.App. 1977), which involved a single agreement containing a clause with personal guaranty language and signed with a corporate signature. The court held that an ambiguity is created, thus allowing parol evidence, when the form of the signature is inconsistent with the assumption of personal liability under the terms of the agreement. *Id.* at 470.

The court in *Standard Meat Co. v. Taco Kid of Springfield, Inc.,* 554 S.W.2d 592, 596 (Mo.App.1977), distinguished *Wired Music,* without disputing the underlying premise of *Wired Music.* The *Taco Kid* case involved a guaranty provision which clearly evidenced the personal nature of the guaranty by the specific language used. *Id.* at 594.

Of the Missouri cases, *United Savings & Loan Assoc. v. Lake of the Ozarks,* 805 S.W.2d 350 (Mo.App.1991), presents a situation most analogous to the instant case. *United Savings* involves execution of a note and a line of credit agreement where the corporation's president signed his name below the name of the corporation. In the body of a separate guaranty, the president was designated as the guarantor with the corporate name and his corporate title appearing after the president's name. The guaranty was executed in a manner different from the note and credit agreement, in that the signature was merely followed by the word "President." In a second guaranty executed by the corporate secretary, the corporate name was written after the signature. The court held that parol evidence should be introduced because an ambiguity existed as to whether the guaranties were executed in a personal capacity. *Id.* at 357.

There are also many jurisdictions where decisions hold that a guaranty cannot be rendered ambiguous solely by the manner in which it is signed. These cases tend to involve guaranties with language that is clear and unambiguous, leaving no doubt that the guaranty was intended to be personally binding, or they involve signatures executed in a manner different from that in the case at hand. *See Moody v. Schloss & Kahn, Inc.,* 600 So.2d 1045 (Ala.Civ.App. 1992); *Sebastian Intern., Inc. v. Peck,* 195 Cal.App.3d 803, 240 Cal.Rptr. 911 (1987); *Summit Consulting v. J.J. Walsh Const.,* 568 So.2d 1290 (Fla.Dist.Ct.App.1990); *Roy v. Davidson Equipment, Inc.,* 423 So.2d 496 (Fla.Dist.Ct.App.1982); *Ricker v. B–W Acceptance Corp.,* 349 F.2d 892, 895 (10th Cir.1965).

The guaranty at issue is most analogous to the first group of cases which allow the admission of parol evidence after considering the document as a whole, including the signature. The language of the guaranty in the instant case does not evidence a clear intent to bind the person signing in a personal rather than a corporate capacity. For example, the guaranty is drafted such that it could be utilized to secure a guaranty from either a natural person or a business entity. The guaranty says that "use of a particular gender shall be interpreted to include the other of masculine, feminine or neuter where the situation so demands" and "references to 'heirs, personal representatives, successors, and assigns' also includes 'successors and assigns' where the situation so demands."

The guaranty is a standard form contract executed on the back of a credit applica-

tion. Throughout the document, the guaranty refers to the debtor only as "debtor" and does not specifically identify the debtor as being the corporation, as do the guaranties in the cases where parol evidence was not admitted. Nor does the language clearly distinguish the debtor as being a separate entity from the guarantor to preclude the debtor and guarantor from being the same party. The above factors, when combined with the form of Lindsey's signature, render the agreement ambiguous. The trial court did not err in finding such.

■ Because the guaranty was ambiguous, the trial court properly considered parol evidence as to the parties' intentions. *Mercury Inv. Co. v. F.W. Woolworth Co.,* 706 P.2d 523, 529 (Okla.1985). Viewing the evidence of the parties' intent in the light most favorable to the judgment, the evidence supports the trial court's judgment. The credit application was the only other documentation of the corporation's liability. The application did not address such matters as presentment and demand or liability for collection costs and attorney fees. Execution of the guaranty by Lindsey in a corporate capacity was not redundant or meaningless.

■ Lindsey testified that he told Harrison he would not sign the document as a personal guaranty and that Harrison assured him such terms were acceptable. Harrison testified that he did not make such an oral agreement with Lindsey before the guaranty was signed. Harrison also testified, however, that he was aware that Lindsey signed the document as he did, yet Harrison did not ask him to remove the corporate identification. Although deciding whether the document is ambiguous constitutes a question of law, weighing the witnesses' testimony to ascertain the parties' intentions is a question of fact. On appeal, the court will defer to the wide discretion of the trial court regarding questions of fact even if there is evidence to support a different conclusion. *Calvary Heights Baptist Temple v. Molasky,* 733 S.W.2d 774, 775 (Mo.App.1987). The court will also grant deference to the trial court's

findings regarding witness credibility. *T.B.G.,* 772 S.W.2d at 654.

■ On appeal, the burden is on the appellant to prove error in the trial court's judgment. *State, et. al., Plaza Prop. v. Kansas City,* 687 S.W.2d 875, 876 (Mo. banc 1985). United Siding has not met this burden and has failed to establish that as a matter of law the agreement executed by Lindsey was a personal guaranty.

The judgment is affirmed.

All concur.